[No. 1030.    September 13, 1904.]

## THE REGENTS OF THE AGRICULTURAL COLLEGE of NEW MEXICO, Appellants, v. J. H. VAUGHN, Treasurer of New Mexico, Appellee.

### SYLLABUS.

When the Legislature passes an act creating a fund to be known as the "Temporary Provisional Indebtedness Fund," and orders the territorial treasurer to transfer to it the several sums which are to the credit of certain designated funds, mandamus will not lie to compel the treasurer to transfer to it other moneys than those in the funds named in the act.

Appeal from the District court of Santa Fe county before JOHN R. McFIE, Associate Judge.    Affirmed.

A. B. FALL, H. B. HOLT and G. A. RICHARDSON, for Appellants.

Under the practice in New Mexico, the petition is a part of the alternative writ.

Peres v. Barber, 7 N. M. 223; 13 Ency. Pl. and Pr., 671-73.

All material allegations well pleaded in the petition, and not denied or answered in the answer, will be deemed and taken as true.

> Linch et al. v. State (Neb.), 47 N. W. 88.

An argumentative denial is no denial.

> Woodruff v. N. Y. & N. E. R. Co., 20 At. 17.

Facts must be pleaded and not conclusions.

> Tapping on Mandamus, art. 352, pp. 394, 395, 401 and 413; People v. Kelduff, 15 Ill. 492.

The section of the statute referred to needed no interpretation, because, even though the word "bond" is injected in the description of the one, and the word "sinking" omitted from the description of the two funds, the word "fund" is broad enough to include "sinking fund."

> State v. City of Jacksonville, 22 Fla. 21; People v. White, 11 Abbott's Practice (N. Y.), 168; Pierce Butler & Pierce Mfg. Co. v. Bleekwenn, 16 N. Y. Supp. 768, 30 N. E. 67; Com. v. Chittenden, 2 Pa. Dist. R. 804; Woodruff v. N. Y. & N. E. R. Co., 20 At. 22; Bd. of Trade v. Nelson, 62 Ill. App. 541; People v. Supervisors of Chenango, 8 N. Y. ——.

Should the statute require interpretation; then the court must presume that the Legislature did not intend a vain thing; that it did not intend to stultify itself, and must so interpret its intent as not to lead to absurd consequences.

> Endlich on Interpretation of Statutes, sec. 43, p. 54, and notes; Ib., secs. 72, 111 and 264, pp. 532, 533 and 538; Sutherland on Statutory Construction, secs. 238-239; U. S. v. Basset, 2 Story 399, 246, 248, 250.

In the consideration of the provisions of any statute, they ought to receive such a reasonable construction, if the words and subject-matter will admit of it, as

that the existing rights of the public or of individuals be not infringed.

> Sutherland on Statutory Construction, secs. 322, 323, 324-5.

Such a construction should be adopted as appears most reasonable and best suited to accomplish the objects of the Statute, and all laws should receive a reasonable construction.

> U. S. v. Kirby, 7 Wall, 483; Wilkinson v. Leland, 2 Peters 245; Sedgwick on Constitutional and Statutory Construction, 196.

A thing which is within the intention of the makers of the statute is as much within the statute as if it were within the letter.

> Suckley v. Furee, 15 Johns (N. Y.) 338; Oakes v. National Bank, 100 U. S. 244.

EDWARD L. BARTLETT, Solicitor-General, for Appellee.

This proceeding is governed by our statute, which is simply an enactment of the common law on the subject.

> Compiled Laws of 1897, sec. 2760 et seq.

The information provided for herein, and called by the appellant a petition, is merely for the information of the court.

> 13 Ency. Pl. and Pr., p. 671; Conklin v. Cunningham, 7 N. M. 455-6; U. S. v. U. P. R. R. Co., 2 Dillon 530; Merrill on Mandamus, secs. 253-254, and cases in note; Wood on Mandamus, pp. 92-94.

The relief sought must be exactly prayed for, and no other can be granted, as the peremptory writ must follow the alternative, and the judgment must not be larger than the prayer.

> Merrill on Mandamus, secs. 260, 291, 296; Wood on Mandamus, p. 94; Cross v. West Virginia R. R., 34 W. Va. 742-746; High Ext.

Rem., 449, 450, 484; 13 Ency. Pl. and Pr., p. 684, note 2.

Mandamus will not lie to compel an officer to perform an act, which, without the mandate of the court, would not be his legal duty.

13 Ency. Pl. and Pr., p. 494-5, and cases cited in note 1.

Mandamus will never issue to compel a respondent to do an act which is unlawful or against the spirit of the law, or where the act is impossible of performance.

Wood on Mandamus, p. 38; Ex parte Rowland, 104 U. S. 612; Brownsville Tax. Dist. v. Levogue, 129 U. S. 501; McClatchy v. Mathews, 67 Pac. 135; Ortega v. Padilla, 10 N. M. 40; U. S. v. Seaboard R. Co., 85 Fed. 955; Labette Co. v.U. S., 7 Fed. 318, 320; Prest. Elizabeth, 40 Fed. 799-801; State v. Perrine, 34 N. J. L. 257.

The acts sought to be compelled in this action are illegal and violative of constitutional provisions against the impairing of the obligations of contracts.

Cooley on Taxation, pp. 548-573; Benjamin v. District, 50 Iowa 648, 650; Curtis v. Whipple, 24 Wis. 350-355; Loan, Assn. v. Topeka, 20 Wall. 655; Calder v. Bull, 3 Dallas U. S. 388-9; 1 Rose's Notes, p. 85; Wilder v. R. R. Co., 7 Mich. 305, 38 N. W. 290; Denver Ry. Co. v. Outcalt, 2 Col. App. 405-7; Durkee v. Janesville, 28 Wis. 464.; State v. Cardozo, 8 S. C. 71, 28 Am. Rep. 275; Graham v. Horton, 6 Kas. 243, 50 Kas. 190; Ohio L. Ins. Co. v. Debolt, 16 How. U. S. 432; State v. Haben, 23 Wis. 229 (reprint) 633; McGahey v. Virginia, 135 U. S. 662-71 and 10 How. (U. S.) 190; Seibert v. U. S., 122 U. S. 284; N. Y. University v. People, 99 U. S. 309; Green v. Biddle, 8 Wheaton 1; Sinking Fund cases, 99 U. S. 700; 718, 725.

By the obligation of a contract is meant the means

which at the time of its creation the law affords for its enforcement.

> Louisiana v. St. Martin's Parish, 111 U. S. 716-720; Van Hoffma v. Quincy, 4 Wall. 535; Gunn v. Barry, 15 Wall. 610; La. v. N. O., 102 U. S. 203; Walker v. Whitehead, 16 Wall. 314; See, also, 19 Ency. Law (2 Ed.), p. 764; Hower v. McChesney, 81 Fed. 483; Huntingson v. Westhen, 120 U. S. 101-2; Demnan v. Brodrick, 111 Cal. 105; Menard v. Shaw, 5 Tex. 334; Bracken v. Wells, 3 Tex. 88.

The rule is that in all matters requiring the exercise of official judgment, or resting in the sound discretion of a person to whom a duty is confided by law, mandamus will not lie to control that discretion or to determine upon the decision which shall be finally given.

> United States v. Seaman, 17 How. 225; U. S. v. The Commissioner, 5 Wall. 563; Secretary v. McGarrahan, 9 Wall. 298; State v. Board of Liquidations, 23 La. Ann. 288; State v. Shaw, 23 La. Ann. 790; State v. Warmouth, 23 La. Ann. 76; People v. Collins, 19 Wend. 56; People v. Atty. Gen., 22 Barb. 114; People v. Brannan, 39 Barb. 61; Freeman v. Selectmen of New Haven, 34 Conn. 406; State v. Robinson, 1 Kas. 188; Commonwealth v. Cochran, 5 Binn. 87; Seamore v. Eli, 57 Conn. 103; Swan v. Gray, 44 Miss. 393; People v. Adams, 3 Mich. 427; Howard v. Eldridge, 43 N. Y. 457; People v. Leonard, 74 N. Y. 443. Shober v. Cochrane, 53 Md. 544; Berryman v. Perkins, 55 Cal. 483. State v. Nash, 23 O. St. 568; U. S. v. Thatcher, 2 McArthur 24; Hull v. Comm's of Patents, 2 McArthur 90-125; Holiday v. Henderson, 67 Ind. 103; Bledsoe v. International R. Co., 40 Tex. 537; Utter v. The State, 38 O. St. 496;

Bailey v. Ewart, 52 Iowa 111; People v. Fairchild, 67 N. Y. 334.

The duty of the officer must be plain and unambiguous.

U. S. v. Whitney (D. C.), 6 Cent. Rep. 290, 5 McKay; 13 Am. and Eng. Ency. Pl. and Pr., 495; Wood on Mandamus, 38; Ex parte Rowland, 104 U. S. 612; Brownsville Tex. Dist. v. Lavogue, 129 U. S. 501; McClatsky v. Mathews, 67 Pac. 135; U. S. v. Seaboard R. Co., 85 Fed. 955; State v. Perrin, 34 N. J. L. 57.

The rule of law is that where a statute is in plain and unambiguous terms, there is no reason for construction even by a court.

Endlich on Statutes, secs. 24-27; Sutherland on Statutory Construction, secs. 237-238; Sturgis v. Crowninshield, 4 Wheat. 220.

A sinking fund is a sacred trust, maintained for the specific purpose for which it was brought into being, and cannot be used for any other purpose.

Kelley v. Minneapolis, 30 L. R. A. (Minn.) 285; Phinney v. Phinney et al., 4 L. R. A. (Maine) 348-350, and note; 1 L. R. A. (Penn.) 356, and notes, p. 359.

There are certain principles in our republican governments, which will overrule a flagrant abuse of legislative power.

Fletcher v. Peck, 6 Cranch 143; Wilkinson v. Leland, 2 Peters 656-658; Terrett v. Taylor, 9 Cranch 50, 52; 5 Paige, 159; 1 O. St. 86; 2 O. St. 628; 2 Yerg. 603; 5 Porter 359-62, 375-77; State ex rel. McKinley v. Cardoza, 8 S. C. 71, 28 Am. R. 275; State v. Bank of South Carolina, 1 S. C. 78; Graham, State Treasurer, v. Horton, 6 Kas. 355; State v. Haben, 22 Wis. 629-634; Seibert v. Louis, 122 U. S. 284-295; Green v. Biddle, 8 Wheaton 85.

OPINION OF THE COURT.

MILLS, C. J.—This is an action in mandamus, brought by the board of regents of the agricultural college of New Mexico v. J. H. Vaughn, treasurer of the Territory of New Mexico, by which petitioners seek to compel the said Vaughn, as such treasurer, to pay to them the sum of $25,000 out of the temporary provisional indebtedness fund.

By sec. 2 chap. 108 of the Session Laws of 1903 (the appropriation bill) the legislative assembly appropriated to the agricultural college of New Mexico, the sum of $25,000 in addition to another appropriation made to the same institution, and the law provided that this sum of $25,000 was appropriated "out of the temporary provisional indebtedness fund hereinafter created." An examination of chap. 108, Laws of 1903, discloses that there was attempted to be appropriated out of the temporary provisional indebtedness fund, to be created, to various institutions in the Territory, and for defraying the expenses of the statehood committee and to pay various deficiences, a large sum of money.

By sec. 13, of this same act there was established a fund to be known as the "temporary provisional indebtedness fund," out of which fund the cash appropriation to the Territorial institutions, and all other cash appropriations made by the bill were to be immediately paid and to provide funds for such payments, the Territorial treasurer was ordered and directed to transfer to said temporary provisional indebtedness fund," for the payment of such appropriations, all the funds now in the Territorial treasury or in the Territorial depositories to the credit of the capitol building bond fund, the provisional indebtedness bond fund, and the Louisiana Purchase Exposition fund, together with all the sum to come into his hands up to July 1, 1903 by virtue of levies heretofore ordered to be made for the above enumerated funds."

Demand was made by the regents of the agricultural college upon the Territorial auditor for the issuance of a warrant upon the Territorial treasurer for the said sum of $25,000 so appropriated, but the auditor declined to issue the warrant on the ground that the treasurer had informed him that there were no funds available in the treasury out of which to pay it.

An alternative writ of mandamus was then sued out which sought to compel the treasurer to pay the said sum or show cause why he should not do so.

The Territorial treasurer filed an answer to the alternative writ, which answer sets up that "there are not now and never has been in his hands, under his control, or subject to his order as Territorial treasurer, nor are there in any Territorial depositories, any sums of money in the capitol building bond fund," and a traverse of a similar nature was filed as to the provisional indebtedness bond fund. The answer also shows that the money to the credit of the Louisiana Purchase Exposition Fund had been transferred from said fund and credited to the temporary provisional indebtedness fund.

On the hearing the return of the respondent was held to be sufficient defense, and the peremptory writ was denied except so far as the balance remaining in the hands of the treasurer to the credit of the provisional indebtedness fund, out of moneys transferred thereto from the Louisiana Purchase Exposition fund was concerned.

The gist of this case is, did the court below err in disallowing the issuance of the writ of mandamus asked for and in refusing to order the Territorial treasurer to transfer to the credit of the temporary provisional indebtedness fund, created by sec. 13, chapter 108, Laws of 1903, the money held by him as such treasurer in the account designated on his books as capitol building bond sinking fund and provisional indebtedness bond sinking fund, when the act under which the money was appropriated ordered him to pay into the temporary

provisional indebtedness fund all moneys credited on his books to the capitol building bond fund and the provisional indebtedness bond fund.

From the evidence introduced in the case it is clearly established that on April 28th, and August 11, 1885, the then Territorial treasurer opened an account on his books designated as the capitol building bond fund, and also that such account was closed on March 1, 1887, and that in 1889, an account known as the provisional indebtedness bond fund was opened by the then treasurer, and that such account was closed on November 18, 1899, and that since the dates of the closing of both of these accounts there has been nothing to the credit of either of them.

As neither of the accounts mentioned in section 13, chap. 108, Laws of 1903, to-wit: The capitol building bond fund and the provisional indebtedness bond fund, are now carried on the books of the treasurer, they having been closed many years ago as disclosed by the evidence, it is apparent that there was no money to the credit of either of these accounts which could have been transferred to the credit of the temporary provisional indebtedness fund as provided for in the law of 1903. The contention of the appellants is that it was the intention of the Legislature to have transferred to the temporary provisional indebtedness fund the money standing on the books of the treasurer of the Territory to the credit of the capitol building bond sinking fund, and the provisional indebtedness bond sinking fund, and that the treasurer should have construed the law so as to transfer the balances standing to the credit of these accounts to the temporary provisional indebtedness fund.

We do not so construe the duty of the treasurer. The laws of this Territory designate names under which certain funds shall be carried on the books of the treasurer, and provide that payments of warrants shall only be made out of funds to the credit of the accounts on

which they are drawn, and that if there is no money in the treasury to the credit of the particular fund on which the warrant is drawn, that such warrent shall not be paid, and that if it is paid the treasurer shall be liable to a heavy fine and imprisonment and removal from office. Under these circumstances we do not think that the treasurer would have been justified in assuming that it was the intent of the Legislature to have him transfer to the temporary provisional indebtedness fund, moneys carried on his books in other names than those designated in the act. The treasurer showed proper caution and prudence in not making the transfer, without being compelled by an order of the court to do so.

Sec. 13, of chap. 108, Laws of 1903, is not at all ambiguous. Its wording is clear and resort need not be had to any other law or to any of the rules of statutory construction to explain its meaning. The presumption is that the legislative body knew just what it was doing when it passed it. It would be a violent stretch of the imagination to hold that the Legislature intended to order funds other than those mentioned in the law to be turned over to the temporary provisional indebtedness fund, created by it. As far back as 1884, the Legislature enacted that funds to pay the interest on and to redeem the capitol building bonds, should be carried on the books of the Territorial treasurer in a fund to be called the capitol building bond sinking fund; and in 1889, it provided that funds to pay the provisional indebtedness bonds when due should be carried in a fund to be called the provisional indebtedness sinking fund. Surely if the legislature had intended to transfer these funds to the temporary provisional indebtedness fund, it would have said so. If the community at large is presumed to know the laws, a much stronger presumption exists that the members of the legislative body are familiar with them.

It is said by the highest judicial tribunal in the land that, "mandamus lies to compel the performance

of a statutory duty only when it is clear and indisputable." Bayard v. White, 127 U. S. 246; and again, "Mandamus lies to compel a party to do that which it is his duty to do without it. It confers no new authority." Brownsville Taxing District v. Loague, 129 U. S. 493. We fail to see in the case at bar, how it can be contended that the transfer of the money sought to be enforced in this action was clear and indisputable.

The court below committed no error in refusing to issue the peremptory writ of mandamus asked for, to compel the transfer of the money to the credit of the capitol building bonds sinking fund, and the provisional indebtedness sinking fund, to the temporary provisional indebtedness fund.

It is unnecessary for us to consider the alleged error that the respondents return to the alternative writ was insufficient in law, further than to say that under our statutes and the authority of the cases of Conklin v. Cunningham, 7 N. M. 455, and Territory v. Brown, 7 N. M. 568, which hold that in proceedings in mandamus the case must be heard on the writ and answer, it seems to us to be sufficient.

There is no error in the judgment complained of and the same is therefore affirmed.

Parker, Pope, JJ., concur.

McFie, A. J., having tried this case below did not participate in this decision, nor did Mann, A. J., who was not on the bench when the same was heard, nor Baker, A. J., who was interested in the result.