The People of the State of New York ex rel. John Kohlepp, Respondent, *v.* Richard A. McGee, Warden of the Penitentiary of the City of New York, Riker's Island, New York.
The People of the State of New York and the District Attorney of the County of Bronx, Appellants.

First Department, May 5, 1939.

*Sol. Boneparth* of counsel [*Herman J. Fliederblum* with him on the brief; *Samuel J. Foley, District Attorney*], for the appellants.

*Aaron Samuelson,* for the respondent.

COHN, J.   The relator, John Kohlepp, was sentenced to the New York County Penitentiary on April 30, 1936, from the County Court, county of Bronx, following a plea of guilty to a violation of section 1897 of the Penal Law (carrying and use of dangerous weapons), as a misdemeanor.

After he had been confined in the New York County Penitentiary for thirty-one months Kohlepp secured a writ of habeas corpus to test the legality of his further detention claiming that he should have been released after he had served twenty-seven months and twenty-five days.  He based his claim upon the fact that shortly after he had been received in prison he was allotted marks by the parole commission which would require thirty-three months for him to earn and that in addition thereto, pursuant to the rules of the commission, he was entitled to a credit of five days per month for good conduct and industry.  The writ was sustained and the appellants now appeal from the order entered on December 3, 1938, which directs relator's unconditional release, contending that the Special Term was without power to command the discharge of the prisoner either on parole or unconditionally, until the expiration of the three-year term.

The Legislature created the parole commission for the city of New York by Laws of 1915, chapter 579, as amended by Laws of 1916, chapter 287, and Laws of 1919, chapter 242 (McKinney's Unconsolidated Laws, Cities First Class, §§ 751 to 759). The Parole Commission Act, which applies only to cities of the first class, has been declared valid and constitutional. (*People ex rel. Kipnis* v. *McCann*, 199 App. Div. 30; affd., 234 N. Y. 502.)

The pertinent parts of that statute which govern sentences to the penitentiary read as follows:

"§ 4. * * * The term of imprisonment of any person sentenced to any such penitentiary shall not be fixed or limited by the court in imposing sentence. The term of such imprisonment shall be terminated in the manner prescribed in section five of this act and not otherwise, and shall not exceed three years. * * *

"§ 5. The parole commission shall have power * * * to parole, conditionally release, discharge, retake or reimprison any inmate of any penitentiary under the jurisdiction of a department of correction in said cities, committed thereto under an indeterminate sentence, provided the judge or court who made such commitment to such penitentiary or any successor thereof shall, upon recommendation of the parole commission created in pursuance of this act, approve in writing such parole, conditional release or discharge of such inmate. The said commission shall have power to make all necessary rules and regulations not inconsistent with the laws of the State, prescribing the conditions under which eligibility for parole may be determined and under which inmates may be paroled, conditionally released, discharged, retaken and reimprisoned."

These provisions can only mean that a sentence to the penitentiary in the city of New York is one for a term of three years subject to the power of the parole commission of the city of New York, with the written concurrence of the sentencing judge or any successor, to parole, conditionally release or discharge the prisoner prior to the expiration of three years. Here relator was subject to the jurisdiction of the commission from the date of his commitment, April 30, 1936, up to and including April 29, 1939, and in the discretion of that body he might be detained for the entire period.

"Parole is not a right, but a privilege, to be granted or withheld as discretion may impel." (*People ex rel. Cecere* v. *Jennings*, 250 N. Y. 239, 241.) The discretion of the parole commission in determining when a prisoner within its jurisdiction shall be paroled or when he is to be retaken for a violation of parole, provided that the full term is not in excess of three years, is not subject to judicial review. (*People ex rel. Romain* v. *Parole Commission*, 116 Misc.

758, 759, 760; affd., 205 App. Div. 840; *People ex rel. Rabiner* v. *Warden of City Prison,* 209 id. 795, 798; *Matter of Hogan* v. *Canavan,* 245 id. 391, 394; *People ex rel. Kleinger* v. *Wilson,* 254 id. 406, 408.)

On September 3, 1936, the parole commission, with the approval of the sentencing judge, fixed at thirty-three months the tentative minimum time at which relator's application for parole might be considered. In its written communication to the judge at that time the commissioners stated that " As a further incentive for good conduct and industry the inmate *may be credited* with an additional number of marks equivalent to a reduction of five days per month." (Italics ours.) This allowance for good behavior is sanctioned by a resolution adopted by the parole commission on September 20, 1934, extending to all in the penitentiary an opportunity to earn five days per month provided there are no infractions against the inmate while confined. The statute authorizes the commission to adopt such a rule. (Parole Commission Law, § 5.)

The letter to the court, upon which relator so strongly relies, in no sense bound the parole commission to release him in thirty-three months, nor did it obligate the commission to award to the prisoner a diminution of five days per month. The rules adopted by the parole commission which provide that marks be allotted to a prisoner and that he may also have the privilege of earning a reduction of five days a month are designed merely to fix the tentative minimum time when a prisoner's application for parole will be presented for consideration. There is nothing in the statute which requires the parole commission, conditionally or otherwise, to release the prisoner before he has served the full term of three years. " Under the Parole Commission Act there is no limit to the minimum; that rests entirely in the discretion of the Commissioners." (*People ex rel. Liebowitz* v. *Warden,* 186 App. Div. 730, 732.) In this case the commission, at the expiration of the tentative period and on July 21, 1938, considered the relator's eligibility for release and in the exercise of its discretion determined, as was its right, that he was not yet a fit subject for parole.

It seems well settled that the provisions of the Correction Law (§ 230, as amd. by Laws of 1935, chap. 902) which permit a discretionary reduction of sentence not to exceed ten days for each month for good behavior to prisoners in State penal institutions do not apply to the New York County Penitentiary. (*People ex rel. White* v. *Comr. of Correction,* 198 App. Div. 384, 387; *People ex rel. Pinchback* v. *Warden, etc.,* 184 id. 777; *People ex rel. Angley* v. *Warden,* 153 Misc. 307.)

Relator also asserts that he is entitled to credit for sixty-eight days spent in jail prior to his conviction. (Penal Law, § 2193.)

Where, as here, the sentence was imposed upon relator under the Parole Commission Act, this court has held that section 2193 of the Penal Law has no application. (*People ex rel. Stein* v. *McCann*, 225 App. Div. 623.) However, that question is not altogether free from doubt. (See dissenting opinion by FINCH, J., at p. 624 *et seq.*, in the same case.)

We regard as a distinct hardship a rule which precludes the allowance of time spent in jail prior to commitment to the New York County Penitentiary, whereas by force of statute in nearly every other penal institution such time is calculated as part of the prison term. We think, too, that it might best conserve the interests, not only of inmates but of those connected with penal administration, if for meritorious conduct and industry a definite diminution of sentence be awarded to prisoners confined in the New York County Penitentiary. The hope of earning discharge from prison for good conduct is one of the greatest incentives to the maintenance of prison discipline. The purpose of the Parole Commission Act is to effect moral reformation rather than to inflict punishment, and its aim is to elevate the standards of the criminal by " humane and sympathetic treatment." (*People ex rel. Kipnis* v. *McCann, supra*, at p. 38.) In consonance with these laudable objects, rewards for exemplary behavior and diligent devotion to duties ought not to be withheld from a prisoner by the Parole Commission save for very good cause.

However, if credits are to be allotted as of right to prisoners committed to the New York County Penitentiary for time spent in jail before conviction and for good behavior during the term of detention, a mandate to that effect must come from the Legislature. Without statutory authority the courts may not compel the granting of these privileges.

No doubt the parole commission of the city of New York, in determining the date when a prisoner is eligible for parole, will, in the exercise of a sound discretion, make due allowance for time served in jail before sentence and will also award appropriate credit for good conduct and industry.

The district attorney states that relator has a record of thirteen arrests and that when under the influence of liquor has had vicious tendencies; that the commission accordingly believed that he was not a fit subject for parole and that it refused to assume responsibility for releasing him before the end of his three-year term. The Parole Commission Law specifically declares that a prisoner sentenced to the penitentiary may be released before the expiration of three years, either on parole or otherwise, only by the parole commission with the written approval of the sentencing judge or any successor. The duty and responsibility for discharging

a prisoner rest with the parole commission. Over the exercise of its discretion there is no judicial control.

For the foregoing reasons the order sustaining the writ of habeas corpus should be reversed, the writ should be dismissed and the relator should be remanded to the New York County Penitentiary there to be dealt with according to law.

MARTIN, P. J., O'MALLEY and TOWNLEY, JJ., concur; CALLAHAN, J., dissents.

CALLAHAN, J. (dissenting). Some time after April 29, 1936, and before September 3, 1936, the parole commission, having before it all the facts concerning the relator's past record, fixed marks which if earned would make thirty-three months the minimum period to be served by relator before he was eligible for parole. This fixation was approved by the sentencing judge. The marks fixed have been earned.

In 1934 the parole commission, pursuant to the power conferred upon it by law, adopted a resolution, which is still in effect, providing that all prisoners whose marks are fixed and whose behavior was good would earn a diminution of their period of confinement of five days off in each month of the time fixed. It is conceded that relator's conduct was such that he earned this time off. Crediting five days off in each month for good behavior against the thirty-three months, the relator was eligible for parole in August, 1938. The parole commission, in accordance with its custom, considered his case a month before the minimum period expired, i. e., in July, 1938. It then reversed its prior decision and determined that relator was not a fit subject for parole. In doing so the commission appears to have acted on further consideration of relator's record before incarceration and decided not to take the responsibility of paroling him. In doing this, in my opinion, it acted improperly. The minimum time fixed of thirty-three months was a decision of the question as to when the date of eligibility for parole would arrive. This was approved by the sentencing judge. The parole commission had no authority to change this decision to the prisoner's detriment, unless in doing so it acted on some misconduct of the prisoner or other good ground which occurred after its fixation of the period to be served. No such ground existed in this case. The commission admits the marks assigned were earned, but says that fixation of minimum time was tentative and merely meant that the question of parole would be considered again when the minimum sentence was served. I think that the fixation was more than a promise to consider the question of parole again.

However, even if we assume that the commission was not compelled to accept parole, but might reconsider its determination to do so, at least it is clear that its resolution of 1934, awarding time off for good behavior, was not tentative in any way. It provided that *every* inmate, in case his conduct was good, was to receive a certain diminution of sentence in each month during the period of confinement. The commission should have rescinded this resolution or applied it without exception in each case where conduct was good.

I cannot agree that the language of the resolution may be construed to mean that the commission *might* award an earlier parole at the rate of five days a month if the conduct of a prisoner was good. By its terms it definitely promised a commutation for good behavior. Nor does the resolution necessarily conflict with the statutory requirement for approval by the sentencing judge for an earlier parole.

In any event, in the present case, the maximum period for which incarceration might have continued (thirty-six months), less the time off for good behavior under the resolution, would have resulted in relator's sentence expiring before Special Term granted his release.

Under the circumstances the order appealed from was correct and should be affirmed.

Order reversed, writ dismissed, and relator remanded to the New York County Penitentiary there to be dealt with according to law.