287 P.2d 605

Carl E. OWENS, Petitioner,

v.

Edwin SWOPE, Respondent.

Carl E. OWENS, Petitioner,

v.

Irwin MOISE, Wayne Collins, Dr. John F. Conway, Adolfo P. Chavez, and Lincoln O'Brien, Respondents.

Nos. 5960, 5961.

Supreme Court of New Mexico.

Sept. 2, 1955.

Rehearing Denied Sept. 29, 1955.

Harry L. Bigbee, Santa Fe, for petitioner.

Richard H. Robinson, Atty. Gen., Santiago E. Campos, Fred M. Standley, Asst. Attys. Gen., for respondents.

F. Gordon Shermack, Santa Fe, amicus curiae.

PER CURIAM.

Both of the causes docketed in this Court, Nos. 5960 and 5961 have for their object the same end, namely, the proper interpretation of our so called "good time" statutes and "indeterminate sentence" laws and their true relationship to each other. The case first filed, No. 5960, is a habeas corpus proceeding in which petitioner asks his release and discharge from the custody of Edwin Swope, Superintendent of the State Penitentiary, where it is claimed he is illegally restrained of his liberty. The second case, No. 5961, is one in mandamus brought by petitioner against members of the State Parole Board asking a writ commanding them to approve an order of parole for petitioner as having fully and completely served the time necessary under the "good time" laws in effect to entitle him to discharge.

Counsel for the petitioner serving by appointment of this Court, has well stated the purpose in filing the two separate suits, or actions, as follows:

"It is Petitioner's information that no procedural questions will be raised and none are anticipated, and therefore will not be briefed at this time. The purpose of filing the two actions was that in event it might be raised as a question that a proper procedure would be a mandamus against the Parole Board rather than a habeas corpus action; or if the opposite contention should be raised, that any procedural questions are eliminated by filing the two separate actions.

"It is, however, Petitioner's attorney's opinion that the filing of the mandamus action was probably unnecessary and that the Parole Act of 1955 did not so change the law as to eliminate habeas corpus proceedings in this type of proceeding. See Sections 22–11–1; 22–11–5 of the 1953 statutes. It is, however, Petitioner's attorney's impression that the Court does not necessarily desire this question to be briefed for the reason that certainly if a habeas corpus proceeding is not a proper proceeding, and therefore since the two actions are consolidated for the purpose at least of filing briefs and will at least be jointly considered by the Court; no useful purpose is served in determining which of the two actions is the proper one."

A brief statement of the charge against petitioner and the sentencing therefor follows. He was convicted of the crime of uttering and passing forged bills of exchange with intent to defraud contrary to § 41–2002, N.M.S.A.1941 Compilation, on the 26th day of October, 1953, in the County of Santa Fe, New Mexico, in cause No. 6360. The judgment and sentence of the court was that petitioner should serve a sentence of three to four years in the State Penitentiary, and the court further provided that the term of said sentence was to start or commence to run on the 14th day of June, 1953. Upon commitment to the State Penitentiary, the following, called "Trusty Good Time Figuring Sheet," was prepared. Respondents attach this sheet in connection with their argument and submit it as Exhibit "A".

## EXHIBIT "A"

# THE PENITENTIARY OF NEW MEXICO

## Trusty Good Time Figuring Sheet

No.------------ Name-------------------------------------------------------

Sentenced Date .......53–6–14..........
To Serve .............3...................
Full Time .............56–6–14.........
State G. T. ...........6...................
..........55–12–14........
Date on X. G. T. ......53–12–1..........
4......2 – 13...........
Rest'd to St. G. T. .................. X. G. T. Earned ......6 – 3.............
Off St. G. T. ......................... .........55–6–11...........
Time off St. G. T. .................. ....................................
Lost St. G. T. ......................... .........................................
Date off X. G. T. ...................
Date on X. G. T. ...................
4 .........................................X. G. T. Earned .........................
...........................................
Date Restored to X. G. T. ..................
4....................................
X. G. T. ....................................
...........................................
Earned prior on X.G.T. Job .........................................
Lost Time Restored by Order of Warden ...........................
...........................................
Reports ....................................
......55–6–11...........
Date on X.G.T. Job .....................53–12–1.........
12)......1–6–10 ..........
Earned on X.G.T. Job .....................1–16.............
......55–4–25...........
Court Costs ..............................
Due for Parole or Final ..................

Figured by ................. Date................

Petitioner on the first day of June, 1955, filed his Petition for Writ of Habeas Cor- pus and also Petition for Alternative Writ of Mandamus in this Court and on the same

date this Court ordered the writs issued and set the 20th day of June, 1955, as the date for hearing on the writs.

At the outset, it may be well briefly to trace the history of our so called "indeterminate sentencing" law, our "good behavior" statutes, and the various laws comprising our parole system.

In 1889 our first "good behavior" statute was passed. This statute is now § 42–1–54, N.M.S.A.1953. That statute reads:

"Every convict imprisoned in the penitentiary and who has (performed) or shall perform faithfully the duties assigned to him during his or her imprisonment therein, and shall during the whole of said time have been of uniform good behavior and complied with the rules and regulations of the penitentiary, shall be entitled to a deduction from the time of his sentence for the respective years thereof, and proportionately for any part of a year, to-wit: For the first year, one (1) month; for the second year, two (2) months; for the third year, three (3) months; for the fourth year, four (4) months; for the fifth year, five (5) months; for the sixth year and each succeeding year, six (6) months."

In 1909 our so called "indeterminate sentence" statute, § 41–17–1, N.M.S.A.1953, was passed. This statute is one of the several forms of "indeterminate sentencing" laws. It reached its present form by a slight amendment touching suspended sentences, L.1943, c. 131. The 1909 Act following the 1943 amendment and prior to amendment by the 1955 legislature, reads:

"Every person who shall be convicted of a felony or other crime punishable by imprisonment in the penitentiary, if judgment be not suspended or a new trial granted, shall be sentenced to the penitentiary. The court in imposing such sentence shall fix the maximum and minimum duration of the same. The term of imprisonment of any person so convicted shall not exceed the maximum nor be less than the minimum term fixed by the court. The release of such person shall be determined as hereinafter provided: Provided, that the court may, in its discretion, suspend any sentence imposed upon any person convicted of a felony involving a specific criminal intent, unless such person has previously been convicted of a felony involving a specific criminal intent, upon such terms and conditions as it shall deem proper, and such sentence shall go into effect upon order of the court upon a breach of any of such terms or conditions by the person convicted."

Also in 1909, § 41–17–6, N.M.S.A.1953, was enacted. This section was repealed

by the 1955 Legislature, effective March 26, 1955, § 25, Chapter 232, Laws 1955. This statute provided the basic framework for parole in this State. It read as follows:

"The said prison board shall have power to establish rules and regulations under which prisoners within the penitentiary may be allowed to go upon parole outside the penitentiary building and enclosure (one of which shall be the total abstinence from alcoholic liquors as a beverage), after having served the minimum term of his sentence, but to remain while on parole in the legal custody and under the control of the prison board and subject at any time to be taken back within the enclosure of said penitentiary; and full power to enforce such rules and regulations and to retake and reimprison any inmate so upon parole is hereby conferred upon the superintendent, whose order, certified by the clerks of the prison, with the seal of the penitentiary attached thereto, shall be a sufficient warrant for all officers named therein to authorize such officers to return to actual custody any conditionally released or paroled prisoners. It is the duty of all officers to execute said order the same as ordinary criminal process: Provided, that no prisoner shall be released on parole until the said prison board shall have made arrangements, or shall have satisfactory evidence that arrangements have been made, for his honorable and useful employment, while upon parole, in some suitable occupation, and also for a proper and suitable home, free from criminal influences."

In 1913 the second of our "good behavior" statutes was passed, § 42–1–55, N.M. S.A.1953. This provided for additional earning of "good behavior" time. The statute reads:

"All state convicts confined in the state penitentiary who are of good conduct who work as mechanics, foremen, assistant storekeepers, trustees, and others who work outside the walls of the penitentiary, shall receive in addition to the regular good time, ten (10) days per month additional while working as mechanics, foremen, assistant storekeeper, or trusty or while working outside the walls of the penitentiary."

Section 41–17–1, N.M.S.A.1953, was amended in 1955 and, as amended, now reads:

"Every person who shall be convicted of a felony or other crime punishable by imprisonment in the penitentiary, if judgment be not suspended or a new trial granted, shall be sentenced to the penitentiary. The court in imposing such sentence shall sentence the person for the term as prescribed by law for the particular

crime of which he was convicted. The term of imprisonment of any person so convicted shall not exceed the maximum nor be less than the minimum term fixed by law. The release of such person shall be as provided by law: Provided, that the court may, in its discretion, suspend any sentence imposed upon any person convicted of a felony involving a specific criminal intent, unless such person has previously been convicted of a felony involving a specific criminal intent, upon such terms and conditions as it shall deem proper, and such sentence shall go into effect upon order of the court upon a breach of such terms or conditions by the person convicted."

Section 41–17–1, prior to amendment, was construed by this Court to invest the district courts with power to prescribe a sentence with a minimum and maximum different from those prescribed by the penalty sections of the statutes defining particular crimes so long as the minimum and maximum were within the limits prescribed in each statute. State v. Davisson, 28 N. M. 653, 217 P. 240.

Example: Before amendment where the penalty provided was, say, one to three years, the courts could sentence for a period of from one to two years, or two to three years, or not less than three nor more than three, or any other combination between one and three years.

While listing and quoting statutes which may have some bearing on the question to be determined, we should not overlook two additional statutes dealing with paroles. They are 1953 Comp. §§ 41–17–9 and 41–17–10. They follow:

"41–17–9. If any prisoner shall violate the conditions of his parole or release as fixed by the prison board, he shall be declared a delinquent, and shall thereafter be treated as an escaped prisoner owing service to the state and shall be liable, when arrested, to serve out the unexpired term of his maximum, possible imprisonment, and the time from the date of his declared delinquency to the date of his arrest shall not be counted as any portion or part of the time served. And any prisoner at large upon parole or conditional release who shall commit a fresh crime, and upon conviction thereof shall be sentenced anew to the penitentiary, shall be subject to serve the second sentence after the first is served or annulled; said second sentence to commence from the termination of his liability upon the first or former sentence."

"41–17–10. The provisions of this article that relate to the power of the prison board to parole and release prisoners shall apply to all persons now confined in the penitentiary for felonies whenever such person shall

have served the minimum time fixed by law for the crime for which he was convicted. All paroles herein provided for shall be approved by the governor before the same shall be valid, and no person who has served two (2) previous terms in any penitentiary shall be eligible for parole under this article."

It was an opinion by the office of the Attorney General, No. 6156, issued on May 6, 1955, addressed to the respondents herein that launched all the controversy that has culminated in the filing and prosecution of the present proceedings. Prior to the enactment of the new Parole Act, L.1955, c. 232, which took effect March 26, 1955, a practice had developed whereby inmates upon entering the penitentiary were given tentative release dates. The date was arrived at by an advance computation of all "good time" which the prisoner could possibly earn and such time was then subtracted from the minimum of the sentence imposed. The date thus fixed represented the time at which the newly arrived prisoner could be released on parole. See Exhibit "A", supra. There were, of course, exceptions as, for instance where an inmate had served terms previously on two or more occasions, thereby being ineligible for parole under 1953 Comp. § 41–17–10. Incidentally, it should be mentioned that in some cases where a minimum and a maximum term of imprisonment were imposed, the minimum was later shortened or commuted through an exercise of executive clemency by the governor, resulting in either advancing the eligible date for parole; or, as petitioner's counsel would insist for final discharge of the prisoner, whichever shall be held to represent a true reflection of legislative intent.

In the opinion of the Attorney General, just mentioned, he took the position that the "good time" earned by a prisoner, which under the practice mentioned had for many years been credited against his minimum sentence, was actually to be deducted from his maximum sentence instead; and that it was not, as is claimed here for the petitioner by his counsel, to fix a date for his final discharge, if the minimum sentence thus reduced entitled him to such discharge.

Counsel for the petitioner argues that for a period of more than forty (40) years the various officials in charge of the State Penitentiary, the Governor, the various Parole Boards, or Boards of Trustees acting as such, as well as the district courts over the state, and "probably the Supreme Court," itself, have acted on the assumption and have construed the statutes as contended on behalf of petitioner, viz., as entitling him to a final discharge from the penitentiary, as a matter of right when his minimum sentence, as reduced by "good time," had been served.

Indeed, counsel supporting this view, presumes to quote what he asserts is a typical statement repeatedly made by all district judges in New Mexico, for the past fifteen (15) years, or more, upon imposing a sentence, for example, of one to three years, in substantially the following language, to-wit:

"If you go to the penitentiary and behave yourself and do what they tell you to do, and in all respects conduct yourself as a model prisoner, then and in that event you will get out of the penitentiary in 8 months and 23 days after entering it. However, if you do not do this, it may be that you will have to serve your maximum sentence."

The Attorney General finds it somewhat difficult to dispute the claim of petitioner's counsel that the practice has been as claimed. Indeed, he indicates some embarrassment in respect of this practice and as to the language of the supposed sentence, engendered, no doubt, by the fact that every member of the Supreme Court, save one of us, has served as a district judge for many years, before coming to this bench and has himself imposed many sentences. Accordingly, the Attorney General makes no outright assertion the practice has not been as claimed, but would mitigate its effect, in so far as possible, especially as respects the supposed language of a sentencing judge, by characterizing it as possibly the mere expression of an opinion by him as to when the prisoner "will get out of the penitentiary" *on parole*. The Attorney General ventures that as simply a "guess," since as he asserts, no one can actually know what was in the mind of the judge making the supposed typical statement to a prisoner on sentencing him.

It will be conceded by the Attorney General that if "good time" is to be deducted from the minimum sentence imposed on petitioner, for the purpose of fixing the date of his final discharge, rather than as designating a time in the course of his sentence when he becomes eligible to seek parole, then this petitioner has become entitled to an order directing his release from the penitentiary as one having fully and finally paid his debt to society. This is but another way of putting the decisive question: Does service of an inmate's minimum sentence, less "good time," merely render him eligible to parole, preliminary to application and favorable action by the Parole Board, or does it entitle him to final discharge? Careful consideration of the controlling statutes as well as proper coordination of the "good time" statutes, the "indeterminate sentence" acts and applicable parole laws give us but a single answer. It is that service of the minimum sentence less good time merely fixes a date when the inmate of the penitentiary becomes eligible for parole. It does not fix a

date for his final discharge. This conclusion is reached as our settled judgment of the matter.

A mere reading of the 1909 act, found in 1953 Comp. § 41–17–6, which, though repealed by L.1955, c. 232, § 25, effective March 26, 1955, was in force and effect at all times material to this proceeding, is absolutely convincing that completion of the minimum sentence merely rendered the inmate eligible to parole. Note the language giving the Parole Board power to establish rules and regulations whereby prisoners within the penitentiary "may be allowed to go upon parole outside the penitentiary building * * * *after having served the minimum term of his sentence, but to remain while on parole in the legal custody and control of the prison board and subject at any time to be taken back within the enclosure of said penitentiary*", etc. (Emphasis ours.) We find nothing said there about the prisoner being entitled to final discharge upon serving his minimum sentence. Quite the contrary the act provides and says that, subject to rules and regulations established by the Parole Board, the inmate shall then become entitled to parole.

Other sections of the same act, L.1909, c. 32, §§ 8 and 9, 1953 Comp. §§ 41–17–9 and 41–17–10, dealing with paroles are absolutely convincing of the correctness of this conclusion. They demonstrate by a mere reading that the parole authorized upon service of minimum sentence less good time could not even by forced construction be transformed into authority for final discharge. Indeed, the earlier of the two sections render a prisoner liable upon a breach of his parole to be treated as an escapee who when apprehended is to be brought back and compelled to serve the "unexpired term of his *maximum*, possible imprisonment," etc. (Emphasis ours.)

We are then brought to this unavoidable conclusion in the premises, to-wit, that the good time statutes perform a dual function. Preliminarily, they afford a date of eligibility for parole as the language of 1953 Comp. § 41–17–6 so obviously discloses. But they have yet the ultimate office to perform, namely, that of reducing the period of an inmate's confinement under the sentence imposed. How are they to perform this function? It can be done in one way only and that is by applying the good time earned in reduction of the maximum sentence imposed. There is no other place it can be applied and give the inmate the benefit of it.

■ In some states it has been held that "good time" statutes and "indeterminate sentence" laws are incompatible and accordingly the passage of statutes of the latter kind are deemed to repeal the former by implication. State ex rel. McCoske v. Kinnear, 145 Wash. 686, 261 P. 795; McCoy v. Reid, 172 Ind. 182, 87 N.E. 1086.

Such has not been the case in New Mexico. It was early ruled in this state by the Attorney General, Attorney General's Opinions, 1909–1912, page 147, that 1953 Comp. § 41–17–1, the "indeterminate sentencing" statute, was compatible with the then existing "good behavior" statute, § 42–1–54. The subsequent passage by the legislature of the second "good behavior" statute seemed to indicate an acceptance by the legislature, at least, of the correctness of the Attorney General's ruling. As a matter of fact, we think it safe to say the "good behavior", "indeterminate sentencing" and parole laws have been deemed compatible and are being administered right along together. Ex parte Vigil, 24 N.M. 640, 175 P. 713; State v. Davisson, supra; State v. Compos, 56 N.M. 89, 240 P.2d 228.

Support for the conclusion we have reached is to be found in some decisions from our sister state of Arizona. See Orme v. Rogers, 32 Ariz. 502, 260 P. 199; Beaty v. Shute, 54 Ariz. 339, 95 P.2d 563, and Clark v. State, 23 Ariz. 470, 204 P. 1032. While not in all respects the same as ours, what the Arizona courts say is helpful in reaching a proper construction of our own statutes. Certainly, the Arizona cases are authority for the proposition that the three sets of statutes mentioned can exist along together and that credits for good conduct are to be deducted from the maximum rather than the minimum sentence.

In Orme v. Rogers, supra [32 Ariz. 502, 260 P. 202], the court said:

"In view of the course of legislation in the state of Arizona above recited, as examined in the light of the general history of criminology and the theories applying thereto, we are fully convinced that when the rule for good conduct time was first laid down it was given to the prisoner as a matter of *absolute right*, to be applied only in cancellation of the *definite debt he was held to owe the state*, and that such rule has never been changed. We are of the opinion that counsel for petitioner has been misled by the erroneous view that the so-called 'minimum sentence' is, as a matter of law, a period fixed at which some portion of the debt which the law assumes the prisoner owes to the state is canceled. As we have pointed out, this is not true. Under the Indeterminate Sentence Law, the only time at which the prisoner could ever claim his debt to the state is satisfied as of right is the expiration of the maximum period fixed by his sentence, less such good conduct time as may be given by the statute. The so-called 'minimum sentence' is, and has been since its inception, merely a period at which, and not before, as a matter of grace and not of right, the prisoner may be allowed to serve the balance of his sentence outside the

walls of the penitentiary under such circumstances and conditions as the authorities may provide, or be discharged, but that the only *right* which such minimum period gives him is the right to *request* from the proper authorities such mitigation of his sentence.

"Such being the case, it seems to us that it would be absurb to hold that a credit given as a matter of right for the purpose of lessening the debt owed the state was meant to apply to a period fixed, not as the time when the offender might say, 'My debt is paid, full release is mine as of right,' but as the date when he might petition for permission to serve his sentence under easier conditions or be discharged, if the authorities, as a matter of grace consented thereto. We hold, therefore, that the good conduct time granted by the statute applies not to the minimum period fixed by the sentence, which, as we have stated, is not the time at which under any circumstances the prisoner is entitled to a full release as a matter of right, but to the maximum period, which is the only one at which the prisoner may claim as such right to be fully discharged from the consequences of his offense."

Two cases from New York are cited and discussed in briefs of counsel. One of them, People ex rel. Kohlepp v. McGee, Sup., 8 N.Y.S.2d 726, is cited by counsel for petitioner as authority for the proposition that "good time" is deducted from the minimum sentence. This was the opinion rendered by Special (Trial) Term in Bronx County. The Attorney General follows up by citing the same case on appeal to the Appellate Division of the Supreme Court, State v. McGee, 256 App.Div. 792, 11 N.Y.S.2d 755, where the decision of the trial court was reversed. The trial court had held that "good time" was deducted from minimum sentence for purpose of establishing parole release date, when prisoner became entitled, as of right, to parole. On appeal the court held arrival of tentative parole date did not mean the prisoner was entitled, as of right, to parole.

The Appellate Court, while it did not expressly repudiate trial court's holding that "good behavior" was to be deducted from the minimum, did hold such a practice only served to fix "tentative minimum" when a prisoner's application for parole would be presented for consideration and, further held that arrival of that date did not entitle the prisoner to a final discharge, or parole. This seems very much akin to the practice in our state under the three laws mentioned.

Whether any particular prisoner is entitled to parole is, of course, a matter resting initially in the discretion of the Parole Board, subject to approval by the

Governor. Parole is a matter of grace conferred by the State. Orme v. Rogers, supra.; Ex Parte Harris, 80 Cal.App.2d 173, 181 P.2d 433; Commonwealth v. Polsgrove, 231 Ky. 750, 22 S.W.2d 126. Compare, Ex parte Vigil, supra. And a prisoner is not entitled to parole as a matter of right. So, here, even if the petitioner became eligible for parole, as we must assume he was, under the facts before us, the Parole Board would have to give favorable action to his application to be followed by approval by the Governor, before his right to parole became fixed. Discretion of the Board could not be controlled by mandamus. Sweeney v. Raynolds, 17 N.M. 282, 127 P. 23; Regents of Agricultural College v. Vaughn, 12 N.M. 333, 78 P. 51; State ex rel. Thompson v. Beall, 37 N.M. 72, 18 P.2d 249; Garvey v. Brown, 99 Kan. 122, 160 P. 1027; Hines v. State Board of Parole, 181 Misc. 280, 46 N.Y.S.2d 569. Compare Green v. Gordon, 39 Cal.2d 230, 246 P.2d 38.

Decisions from other jurisdictions supporting the conclusion we reach that for purposes of final discharge the reductions by reason of good time earned are to be made from the maximum sentence are as follows: Wallace v. State, 91 Neb. 158, 135 N.W. 549; Studley v. Studley, 129 Neb. 784, 263 N.W. 139; Garvey v. Brown, supra; Ditchik v. State Board of Parole, 181 Misc. 346, 46 N.Y.S.2d 564; People v. Bowen, 367 Ill. 589, 12 N.E.2d 625; Commonwealth ex rel. Lycett v. Ashe, 145 Pa. Super. 26, 20 A.2d 881.

It seems to be held by the federal courts without noticeable disagreement on the question that an indeterminate sentence is one for the maximum term imposed, with power in the parole board to terminate service within the prison walls at any time after service of the minimum period. Story v. Rives, 68 App.D.C. 325, 97 F.2d 182; United States ex rel. Palmer v. Ragen, 7 Cir., 159 F.2d 356; Uryga v. Ragen, 7 Cir., 181 F.2d 660.

In Commonwealth ex rel. Lycett, supra [145 Pa.Super. 26, 20 A.2d 883], the Pennsylvania Superior Court, said:

"It must be remembered that the maximum sentence imposed is the legal and valid sentence, if within the limit prescribed by the legislature, and the minimum sentence is 'merely an administrative notice by the court to the executive department, calling attention to the legislative policy that when a man's so-called minimum sentence is about to expire, the question of grace and mercy ought to be considered and the propriety of granting a qualified (release) be determined'. Commonwealth v. Kalck, supra, 239 Pa. [at] pages 541, 542, 87 A. [at] page 64. See also 24 C.J.S., Criminal Law, § 1622, p. 204; Ex Parte Parker, 106 Mo. 551, 17 S.W. 658."

In Ditchik v. State Board of Parole, the court said [181 Misc. 346, 46 N.Y.S.2d 568]:

"If release on parole is to be considered as an act of clemency, petitioner's assertion that the board of parole, in refusing to release him, considered the sentence imposed by the court inadequate, and thus substituted its judgment for that of the court, and his assertion that the parole board has released others whose records he considers worse than his own, present no question for review. The term of imprisonment is fixed by the court, and the parole board may neither increase nor diminish it. If parole is not a right, but an act of grace, however, it follows that the court, in imposing an indeterminate sentence, had in mind the provisions of the Correction Law relating to parole, and sentenced the prisoner to serve his maximum term, subject to the discretionary power vested in the board of parole to permit him to serve part of that term outside the prison walls. See People v. Washington, 264 N.Y. 335, 191 N.E. 7; People v. Adams, 176 N.Y. 351, 68 N.E. 636, 63 L.R.A. 406, 98 Am.St.Rep. 675. It also follows that the board of parole may not be compelled to exercise clemency in petitioner's case because it has done so in other cases.

We come now to the argument most relied upon by petitioner's counsel and urged upon us with the greatest vigor and earnestness. It is the claim that commencing approximately forty years ago the practice here invoked was initiated by the penitentiary officials, acquiring approval by indulgence over the years of the Parole Board, the Trustees of the Penitentiary when acting as such, successive Governors, the district judges over the state and even an implied recognition by this Court. State v. Compos, supra [56 N.M. 89, 240 P.2d 230], was decided by us in 1952 and in an opinion by Mr. Justice McGhee, in meeting a contention that the sentence was excessive and should be reduced by us, we said:

"In State v. Jackson, 30 N.M. 309, 233 P. 49, we discussed the question of whether we had the power to reduce a sentence but did not decide the question, saying it did not appear the trial court had abused its discretion in that case in view of the record. We so view the record in this case. The minimum sentence was less than a third of the maximum [50 years] which could have been imposed, and the claim it should be reduced does not impress us. Out of state counsel who wrote the brief for the defendant are evidently unacquainted with the liberal policy which prevails in this state of giving prisoners time off their sentences for good behavior and liberal commutations in addition."

We shall not seek to avoid the implication said by petitioner's counsel to arise from this language as reflecting an assumption on our part that the length of the sentence the prisoner then before us would have to serve would relate itself to the minimum rather than the maximum. It should be mentioned, too, that the opinion in the Compos case was written by Mr. Justice McGhee, a veteran trial judge with fourteen years experience on the district bench. Thus it is that if the claim of petitioner's counsel be correct in the implication he reads from our language in that case, it is quite understandable and is confirmatory of a general assumption on the part of bench and bar that good time was to be subtracted from the minimum sentence for purposes of determining when the prisoner would "get out," in more dignified parlance, be discharged from the penitentiary.

But can any justification for such a construction of the "good time," "indeterminate sentence" and parole laws, read separately, or more properly, read and considered together, be found in these acts? We defy anyone to point out a single syllable, line or paragraph in all or any of the acts that will give support to such a construction. Indeed, rather than supporting such a construction their language contrarily denies and repudiates any such meaning or interpretation. Nevertheless, counsel claim for the practice the aid of practical construction over the years, citing such cases as Temple Lodge No. 6, A. F. & A. M. v. Tierney, 37 N.M. 178, 20 P.2d 280; In re Morrow's Will, 41 N.M. 117, 64 P.2d 1300; Ortega v. Otero, 48 N.M. 588, 154 P.2d 252; Dillard v. State Tax Commission, 53 N.M. 12, 201 P.2d 345, 354, and others.

The Attorney General admits the force of this argument but points out, at the same time, that the very cases cited by petitioner are in agreement that the rule invoked has no application where the statutes said to have been given a practical construction are so plain and unambiguous that they carry no doubtful meaning. And the following language in proof of this claim is quoted from some of the cases cited by petitioner, to-wit:

"* * * The principle is familiar that, *in a case of doubt,* courts will sustain the reasonable construction long and uniformly followed by the co-ordinate member branches of government. * * *" (Emphasis ours.) Temple Lodge No. 6, A. F. & A. M. v. Tierney, supra [37 N.M. 178, 20 P.2d 284].

"The long interpretation of a statute by the executive authority charged with its administration is not binding upon a court, but it is persuasive and will not be lightly overturned *if the act is of doubtful meaning.*" (Emphasis ours.) City of Roswell v. Mountain States T. & T. Co., 10 Cir., 78 F.2d 379, 382.

86

" * . *. * Sometimes the construction placed on a law by the executive department is taken into consideration where the law must be construed because of some doubt as to its meaning. *But, we know of no authority which holds that the courts are bound by such construction if the meaning of the statute and the constitution that authorizes it is so clear, and so unambiguous that its meaning cannot reasonably be misunderstood."* (Emphasis ours.) Dillard v. New Mexico State Tax Commission, supra [53 N.M. 12, 201 P.2d 350].

While no one seems to know just when, why or by whom the practice of deducting "good time" from the minimum sentence for purpose of final discharge, to such extent as it actually has been practiced, was established, it is not difficult for us to see how such a practice may have grown up. Recognizing, as we have held the proper practice to be, that "good time" is deductible from the minimum sentence for the purpose of establishing a date when the prisoner becomes eligible for parole, no doubt in the vast majority of cases actual discharge on parole followed as a matter of course. If our speculation in this matter be true to the facts, it is easy to see how service of minimum sentence less good time, in the course of time, would come to be understood as discharge date. Whatever the facts, however, it is plain to see

there is no basis whatever in the pertinent statutes to support the practice.

Furthermore, the claim put forward on behalf of petitioner that no discretion rests in the Parole Board, once eligibility to parole is established, to give or withhold it as the facts warrant, can not be upheld. It would wreck the entire system of parole to announce any ruling or holding to that effect. We are not unmindful that such a practice as that claimed by counsel for petitioner to have been indulged over the years by those in charge of the administration of our penal system, even though without authority under the law, could not fail to engender false hopes on the part of those affected and thereby result in injustice in the case of individual inmates, once the practice has been held unauthorized. The fact that, by reason of our decision herein it may do so can only be the occasion of genuine regret on our part, a fact always true when results we must declare, in performing faithfully the duty imposed upon us by virtue of our office, cause hardship or injustice.

Frankly, the situation shown to exist, to whatever extent practiced, can only find its remedy in the executive and legislative branches of the government, where responsibility for administration of our penal system lies. It is in no sense a judicial problem, nor can it properly find its solution in the judicial department of our state government.

Nevertheless, if as stated by the petitioner and tacitly conceded by the respondents, sentences were imposed with the thought in mind that good time comes off the minimum for purposes of final discharge, justice and fair play impel us to speak out. Any change in policy as to those committed under the former law will be damaging; and one of the basic purposes of imprisonment, reformation, will be impaired. We recommend that the record of all prisoners, including the petitioner, committed prior to the enactment of the 1955 Law, be reexamined by the parole board with a view of recommending executive clemency by way of a pardon or conditional pardon where warranted, so as to achieve as nearly as possible the former policy of deducting good time off the minimum sentence. Otherwise, those previously released, not having served out their sentences, must be branded as escapees.

Accordingly, conforming disposition of the proceedings before us to what petitioner can claim under admitted facts as a matter of right, namely, eligibility to parole, it must follow from what has been said that the prisoner is remanded to the custody of the Superintendent of the penitentiary in cause No. 5960 and the alternative writ of mandamus against the respondent members of State Board of Parole in No. 5961 is discharged as having been improvidently issued.

It will be so ordered.

COMPTON, C. J., and LUJAN, SADLER, McGHEE and KIKER, JJ., concur.