Commonwealth ex rel. Lycett *v.* Ashe, Warden.

Argued May 1, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*Herbert L. Maris,* for relator.

*Harrington Adams,* with him *H. J. Woodward,* Deputy Attorneys General, and *Claude T. Reno,* Attorney General, for respondent.

OPINION BY KELLER, P. J., June 30, 1941:

This petition for a writ of habeas corpus questions the constitutionality of the Act of June 25, 1937, P. L. 2093, entitled "An act defining the method of computing the aggregate minimum and maximum limits of consecutive sentences imposed upon persons convicted of crime", the body of which is contained in the margin.[1]

We deemed it of sufficient importance to require an oral argument and requested the Attorney General to send a representative of the Department of Justice to present his views at the argument.

Argument was restricted to the following matters:

(1) The constitutionality of the Act of June 25, 1937, supra.

(2) The effect, if any, of the Act on Section 3 of the Criminal Code of 1860, P. L. 382, and the corresponding provision (section 309) of the Criminal Code of 1939, P. L. 872, making prison breach or escape a misdemeanor and fixing the penalty.

The facts, which are not in dispute, may be stated as follows:

---

[1]—"Section 1. Be it enacted, &c., That whenever, after the effective date of this act, two or more sentences to run consecutively are imposed by any court of this Commonwealth upon any person convicted of crime therein, there shall be deemed to be imposed upon such person a sentence the minimum of which shall be the total of the minimum limits of the several sentences so imposed, and the maximum of which shall be the total of the maximum limits of such sentences.

Section 2. This act shall become effective immediately upon its final enactment."

On August 23, 1938 the relator was sentenced in the Court of Quarter Sessions of Washington County (May Sessions 1938, Nos. 175 and 177) to serve two valid consecutive sentences of imprisonment in the Western State Penitentiary, to be computed from the date of his commitment to prison, May 6, 1938, as follows: The first, for not less than one and one-half years nor more than three years; the second, for not less than one year nor more than three years, to begin at the expiration of the first sentence. He was forthwith committed to the Western Penitentiary, where in intended compliance with the provisions of the Act of 1937, supra, the sentences were *recorded* as one sentence of not less than two and one-half years nor more than six years. On October 21, 1938 he was transferred to the Rockview branch of the Western Penitentiary, and on December 8, 1938 escaped therefrom. He was recaptured six days later. On December 15, 1938 he pleaded guilty in the Court of Quarter Sessions of Centre County (February Sessions 1939, No. 6) to the charge of prison escape and was sentenced to the Western Penitentiary for a term of not less than two and one-half years nor more than six years, to begin at the expiration of the sentences in Washington County. Unless affected by the Act of 1937, this sentence was more than was authorized by law for prison escape, for the *original* sentence which relator was serving when he escaped was from one and one-half years to three years, and that should have been the measure of his sentence for the escape: *Com. ex rel. McGinnis v. Ashe,* 330 Pa. 289, 199 A. 185.

(1) It is clear that the purpose of the Act of 1937 was to furnish the legislative authority for the computing together, for purposes of parole, of consecutive sentences of imprisonment, which it was pointed out in *Com. ex rel. Lynch v. Ashe,* 320 Pa. 341, 344, 182 A. 229, was necessary before such a course could be applied by the prison authorities in relation to the parole of

prisoners. It is within the province of the legislature to pronounce what acts, in addition to those recognized at common law, are crimes, and to fix the punishment for all crimes, whether statutory or common law.[2] The legislature has the right to classify crimes, and designate the procedure at trial or after sentence; it may fix the maximum penalty and likewise can, if it sees fit, name the minimum. The necessity or wisdom of its action is a question for its determination, and in so doing it does not violate Art. V, sec. 1 of the Constitution vesting the judicial power in the courts: *Com. v. Sweeney,* 281 Pa. 550, 559, 127 A. 226; *Com. ex rel. Bates v. McKenty,* 52 Superior Ct. 332, 338-339; *Com. v. Kalck,* 239 Pa. 533, 537, 538, 87 A. 61.

Nor are our statutes authorizing the parole of prisoners [3] at the expiration of their minimum sentences, violative of the constitutional provision conferring on the Governor the power to grant pardons and commute sentences, only upon the recommendation of the Board of Pardons (Art. IV, sec. 9); *Com. v. Sweeney,* supra; *Com. ex rel. Bates v. McKenty,* supra; *Com. v. Kalck,* supra. The prison authorities can only recommend to the Governor that the sentences be commuted, (sec. 9 of Act of June 19, 1911, P. L. 1055); and the Act of 1937 in nowise affects this. It must be remembered that the maximum sentence imposed is the legal and valid sentence, if within the limit prescribed by the legislature, and the minimum sentence is "merely an administrative notice by the court to the executive department, calling attention to the legislative policy that when a man's so-called minimum sentence is about

---

[2]—Prior to the Criminal Code of 1860, P. L. 382, laws were passed fixing the penalty for rape and other felonies, without defining them, on the basis of their well-established definitions under the statutes and common law of England. See *Com. ex rel. Case v. Smith,* 134 Pa. Superior Ct. 183, 189-190, 3 A. 2d 1007.

[3]—See Acts of May 11, 1901, P. L. 166; May 10, 1909, P. L. 495; June 19, 1911, P. L. 1055.

to expire, the question of grace and mercy ought to be considered and the propriety of granting a qualified [release] be determined": *Com. v. Kalck,* supra, pp. 541, 542. See also 24 C. J. S. p. 204, sec. 1622; *Ex parte Parker,* 17 S. W. 658, 106 Mo. 551.

Our present system of paroling prisoners is based on the Act of June 19, 1911, P. L. 1055. As amended by Act of June 29, 1923, P. L. 975, it has been held constitutional by the Supreme Court in *Com. v. Sweeney,* 281 Pa. 550, 127 A. 226.

As enacted, the Parole Act of June 19, 1911, supra, made no special provision as to the course to be pursued in the paroling of prisoners committed under consecutive sentences imposed at the same time, and the custom was adopted by the prison authorities of adding the minimum sentences together and the maximum sentences together and considering them, for parole purposes, as one lumped minimum and maximum sentence. This was declared unlawful by the Supreme Court in *Com. ex rel. Lynch v. Ashe,* supra, which held that in order to take advantage of the parole provisions of the Act of 1911, the prisoner must apply for a constructive parole at the expiration of the minimum term of the first sentence, otherwise he would continue serving the balance of his maximum term; but, on the other hand, if he applied for parole at the end of the minimum term of his first sentence and it was allowed, he would then enter upon the minimum term of his second sentence, and while serving it would also be serving the maximum term of his first sentence, thus reducing to that extent the combined maximum terms of his consecutive sentences. For example if a prisoner was sentenced to two consecutive terms of five to ten years each, he could apply for a parole at the end of five years and if allowed he then entered on the minimum term of his second sentence, and at the same time would have the "double status" of serving the balance of the

maximum term of his first sentence; and if paroled·at the end of the minimum term of his second sentence, he would then be entitled to an absolute discharge, if guilty of no violation of his parole, at the end of five years more, thus reducing his maximum sentences of twenty years to fifteen years: *Com. ex rel. Lynch v. Ashe,* supra, p. 346; *Com. ex rel. Considine v. Ashe,* 134 Pa. Superior Ct. 29, 31, 4 A. 2d 229. But the effect of this judicial construction of the operation of the parole provisions of the Act of 1911 was not such that the legislature could not by subsequent enactment change it for the future, so as to provide for the service of the full maximum terms imposed by the consecutive sentences if the convict committed a crime while released on parole. The Act of June 25, 1937 is not retroactive. By its own terms it is limited to consecutive sentences imposed "after the effective date of this act". And as we read the act it applies only to two or more consecutive sentences imposed at the same time by one court. The Act reads "imposed by any court", not, "by any courts". It matters not whether it is acting as a court of quarter sessions or of oyer and terminer, it applies to any court which imposes "two or more sentences to run consecutively ...... upon any person convicted of crime therein". A subsequent single sentence imposed by another court for prison escape, or for crime committed while the convict is on parole, does not fall within its terms, viz., "whenever, after the effective date of this act, *two or more* sentences to run consecutively are imposed by *any court* of this Commonwealth upon any person convicted of crime therein", that is, convicted in the court that imposed the consecutive sentences.

If the prisoner behaves himself well in prison, the Act of June 25, 1937 is advantageous to him, for it permits his parole at the end of the sum of his minimum sentences, without the necessity for prior application for parole. On the other hand, it preserves, pending his

parole, the maximum terms of the sentences imposed upon him, so that if he commits a crime while out on such parole, he may be. returned to the penitentiary to serve "the remainder of the term (without commutation) which such convict would have been compelled to serve but for the commutation authorizing said parole" (Sec. 10 of the Act of June 19, 1911, supra). But this is only in accordance with the original sentences imposed on him, which contemplated that he should serve the maximum terms of his sentences unless his conduct in the penitentiary justified his parole and his conduct on parole was not marred by crime, and does not amount to an increase of those sentences.

Mr. Justice MAXEY, speaking for the Supreme Court in *Com. ex rel. McGinnis v. Ashe,* 330 Pa. 289, 290, 199 A. 185, as to the necessity of obtaining authority from the legislature before the prison authorities could lump two or more consecutive sentences for parole purposes, said "Such authority was obtained in 1937, see the Act of June 25, 1937, P. L. 2093, but this Act being *subsequent* to the prisoner's escape does not affect the present proceedings."

All of the constitutional objections raised by the learned counsel for the relator are answered by the cases referred to above, *Com. v. Sweeney,* 281 Pa. 550, 127 A. 226; *Com. v. Kalck,* 239 Pa. 533; and *Com. ex rel. Bates v. McKenty,* 52 Pa. Superior Ct. 332.

(2) As to the second question for argument, we agree with counsel for relator and the Deputy Attorney General representing the Commonwealth, that the Act of June 25, 1937, P. L. 2093, has no effect on section 3 of the Criminal Code of 1860 or its corresponding section (309) of the Criminal Code of 1939. It is the duty of the prison or penitentiary authorities to enter the sentences on their records just as they are imposed; but for parole and similar purposes, they can compute the aggregate of the sentences so imposed and also enter on their records the total of the minimum and

maximum terms of the consecutive sentences so imposed. It follows that, when the relator escaped from the Rockview branch of the Western Penitentiary, as he was serving the first sentence imposed on him in Washington County, his sentence in Centre County for that escape could not exceed one and one-half years to three years (*Com. ex rel. McGinnis v. Ashe,* supra), to begin at the expiration of his second consecutive sentence: *Com. ex rel. Lewis v. Ashe,* 335 Pa. 575, 576, 7 A. 2d 296. It will accordingly be reduced from two and one-half to six years, as imposed, to one and one-half to three years, to begin at the expiration of the second consecutive sentence imposed in Washington County. See, in this connection, *Narcise v. Eastern State Penitentiary,* 137 Pa. Superior Ct. 394, 9 A. 2d 165. Rule discharged in other respects.

It is so ordered.