## Commonwealth v. White

*Peter Foster, Deputy Attorney General* and *Lucas E. Phillips, Jr.*, for Commonwealth.
*Charles B. Swigart,* for defendant.

VAN HORN, *P.J.*, August 1, 1978—

In Compliance with Pa.R.A.P. Rule 1925

Appellant, Howard Eugene White, was convicted of murder of the third degree, rape and aggravated

assault following a non-jury trial. His post-trial motions were denied, and he has been sentenced to a term of not less than ten nor more than 20 years for the murder conviction, and to two concurrent terms of one and one-half to three years and two and one-half to five years, respectively, on the assault and rape charges. A motion for resentencing has been denied and he now appeals.

In his statements of matters complained of appellant indicates that he will advance three contentions on his appeals: (1) that his offer of a video-tape interview as general evidence at his trial was improperly denied; (2) that he cannot be found guilty of rape, inasmuch as the victim of that offense was his wife; and (3) that his sentence for the murder conviction was excessive. It does not appear that appellant will contest the sufficiency of the evidence to sustain the convictions. Nevertheless, before addressing the issues we understand he does intend to raise on appeal, we deem it essential to set forth briefly the nature and circumstances of his offenses. Our summary is based primarily upon the testimony of Shirley White, which we found to be credible and amply supported by observations made and physical evidence obtained by police officers at the crime scene.

Appellant and Shirley White were married on October 20, 1961. They we divorced on August 2, 1974. About one month thereafter they and their two sons resumed living together. In May of 1975, the Whites joined the Dudley Catholic Church as a family. On that occasion the parish priest performed a ceremony which he described as a "renewal of vows" by appellant and Shirley. In July of 1976, the Whites again separated. As of November, 1976, Shirley had established her residence in a

second floor apartment above a tavern known as "Joe's Bar," and had entered into an intimate relationship with the co-owner of that business, William "Buck" Weaver. In the interim, appellant and the children had begun living with appellant's mother at her residence. Various items of personal property were removed by Shirley from the former family dwelling to her apartment. She and appellant had disagreements about this and especially about her contacts with the children. Shirley retained the district attorney of this county to represent her in his private capacity with regard to these matters. Because of that employment, we granted appellant's request that the district attorney be disqualified as the prosecuting attorney in these cases.

The charges against appellant arise out of events in the apartment of Shirley White on the night of January 9, 1977. In the evening of that day, appellant purchased a .32 caliber revolver and ammunition for the same from an individual he had met in a barroom while watching a telecast of the Super Bowl game, and had asked to help him obtain a hand gun. About 10:30 p.m. that night appellant called at Shirley's apartment and informed her he had come for an encyclopedia set he wanted for the boys, and which she had removed from the family dwelling. "Buck" Weaver was seated in a reclining chair in the living room of the apartment when appellant arrived. Weaver was wearing a tee-shirt, slacks and socks; Shirley, a brief nightgown. Shirley informed Weaver of the stated purpose of the unexpected visit as she carried an armload of the books to appellant, who had remained standing in the entrace hallway. After she gave the books to appellant, Shirley closed the door, but did not lock

it. Appellant surreptitiously followed her into the apartment and took up a position, revolver in hand, near an archway leading to the living room. As Shirley and Weaver came through the archway, each with more of the books in their hands, appellant first fired at Weaver; then, when Shirley attempted to intervene, appellant knocked her to the floor and fired two shots in her direction. Weaver fled to his adjoining apartment by way of a back door, pursued by appellant who fired three more shots at him. All four of the bullets fired at Weaver struck him, wounding him fatally. One of the bullets fired towards Shirley passed through her right forearm and shattered the radius bone.

After the foregoing events appellant left the building, but he shortly reappeared. When Shirley locked herself in her apartment, appellant broke in the door. He reloaded the revolver in her presence, ordered her into a bedroom, and forced her to disrobe and to submit to sexual relations with him while he held the loaded weapon at her head. Subsequently, appellant permitted Shirley to dress and took her in his automobile by a roundabout route to his mother's residence. After a conversation with his mother, appellant agreed to take Shirley to the hospital. He, Shirley and their elder son were en route there when appellant's automobile was stopped at a road block and appellant was taken into custody by state police officers.

•   •   •

## Rape Conviction

Appellant's argument that he cannot be convicted of rape is based on the premise that after

their divorce on August 12, 1974, he and Shirley White were legally remarried when they "renewed their vows" before Father Bender in May of 1975. We are of the opinion that appellant's premise is false and that the ceremony in question did not constitute a marriage. Father Bender clearly did not regard the renewal of vows as the equivalent of a legal marriage. Indeed, inasmuch as no license had been obtained, it would have been unlawful for him to solemnize a marriage; Act of August 22, 1953, P.L. 1344, 48 P.S. §1-21(d). Appellant and Shirley were told by Father Bender that if they wished to be legally married they would have to get a blood test and a license and then come back. Both Shirley and appellant recognized this. When she was questioned about the ceremony by defense counsel, Shirley stated: "He told Bud and I that if we wanted it to be legal, we should get a paper, which we never got." Appellant admitted that he understood Father Bender's instructions to that effect, and also that he had proposed marriage to another woman after he and Shirley separated in 1976. Moreover, he had heard a rumor (untrue) that Shirley and Weaver had been married and he had addressed Shirley as "Mrs. Weaver" when he saw her at the entrance to her apartment in December of that year. From the foregoing circumstances we are convinced that Shirley White and appellant did not intend the "renewal of vows" ceremony to be a marriage, nor did they contemplate that it would serve as such. While the ceremony may have been the prelude to an anticipated future remarriage, it does not supply the evidence of an intention to marry in praesenti essential to a valid common-law marriage.

Even assuming that Shirley and appellant had remarried, the record clearly establishes that on January 9, 1977, they were living in separate residences and that, therefore, the spouse relationship relied on by appellant for exculpation had been terminated: Crimes Code of December 6, 1972, P.L. 1482, as amended, 18 Pa.C.S.A. §3103, as amended May 18, 1976, effective June 17, 1976. Counsel for appellant conceded as much at oral argument of his post verdict motions. However, he now contends that by defining the term "spouse" so as to exclude spouses living in separate residences, our legislature impermissibly isolated "one factor defining the relationship of two spouses to the exclusion of other factors which may be more appropriate in defining that relationship," and thus, that section 3103 of the Crimes Code, as amended, is unconstitutional. Because this argument was not raised until after appellant perfected his appeal following our denial of post verdict motions, we probably need not consider it. Nevertheless, we have done so, and it is our opinion that the contention has no merit.

The common law relative to the crime of rape developed in an era when a married woman was regarded as a mere chattel, the property of her husband. By the marriage contract she was held to have consented to sexual relations with her husband at his pleasure, and under no circumstances could a married man be convicted of rape if the alleged victim was his wife. Changing concepts of morality and the demands of women for equal rights have mandated an end to the concept of wife as chattel. These same forces have also produced the enlarged concept of the spouse relation and the redefinition of the "implied consent" feature of the

marriage contract now found in section 3103 of the Crimes Code, to wit: (a) Whether or not they are "legally" married, persons who are living as man and wife will be regarded as having given "consent" to sexual relations each with the other; (b) Notwithstanding a subsisting "legal" marriage, the consent to sexual relations implied in the marriage contract will become inoperative when the spouses elect either (1) to live in separate residences or (2) to occupy a common residence pursuant to a written separation agreement or court order.

It may be that where spouses occupy separate residences without benefit of a written agreement or court order, there is a substantial possibility that any resumption of sexual relations by them will be consensual. It is also possible that the danger of fabricated accusations will be increased. For these reasons the 1976 amendments may prove to have been unwise. However, the test of constitutionality is not the wisdom of the legislative enactment: Com. ex rel. Lycett v. Ashe, 145 Pa. Superior Ct. 26, 20 A. 2d 881 (1941), but whether or not the legislation in question is so related to the public good and so reasonable in the means it prescribes as to justify the exercise of the police power: Gambone v. Com., 375 Pa. 547, 101 A. 2d 634 (1954); Com. v. Flickinger, 165 Pa. Superior Ct. 95, 67 A. 2d 779 (1949). Subjected to this test, it cannot be said that the 1976 amendment to section 3103 of our Crimes Code is unconstitutional.