Joseph Jamieson, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Board of Probation and Parole, Respondent.

Submitted on briefs April 2, 1985, to Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Joseph Jamieson,* petitioner, for himself.

*Arthur R. Thomas,* Assistant Chief Counsel, with him, *Robert A. Greevy,* Chief Counsel, for respondent.

OPINION BY SENIOR JUDGE BARBIERI, July 2, 1985:

Joseph Jamieson invokes this Court's original jurisdiction[1] and asks for relief in the nature of a writ of mandamus to compel the Pennsylvania Board of Probation and Parole (Board) to recompute the maximum term expiration dates of his two 1970 Erie County sentences. The Board had previously filed preliminary objections in the nature of a demurrer which were overruled. *Jamieson v. Pennsylvania Board of Probation and Parole (Jamieson I),* 83 Pa. Commonwealth Ct. 546, 478 A.2d 152 (1984). The case is presently before us on Jamieson's motion for summary judgment.

The pertinent facts of this case are not in dispute and can be summarized as follows. Jamieson was sentenced on June 2, 1970 in the Court of Common Pleas of Erie County to a term of five to ten years following his conviction for Robbery by Assault by Force.[2] At the same time, he received a consecutive ten to twenty year sentence as a result of his conviction for

---

[1] Section 761 of the Judicial Code, 42 Pa. C. S. §761.

[2] Section 704 of the Penal Code, Act of June 24, 1939, P.L. 872, *as amended, formerly* 18 P.S. §4704, repealed by the Act of December 6, 1972, P.L. 1482. A similar provision is now found at Section 3701 of the Crimes Code, 18 Pa. C. S. §3701.

Rape.[3] These sentences had an effective date of January 28, 1970. Upon his reception at the Western Diagnostic and Classification Center at the State Correctional Institution at Pittsburgh (SCI-Pittsburgh), the minimum and maximum terms of the Robbery and the Rape sentence were aggregated pursuant to the mandate of Section 1 of the Act of June 25, 1937[4] to a single term of fifteen to thirty years. That fifteen to thirty year sentence had a minimum term expiration date of January 28, 1985 and a maximum term expiration date of January 28, 2000. Jamieson was granted parole by the Board on this aggregated sentence effective January 28, 1985 at which time he was released from SCI-Pittsburgh to reside in the City of Pittsburgh.

Jamieson contends in this action that the aggregation of his two Erie County sentences into a single fifteen to thirty year sentence denied him equal protection of the laws in violation of the Fourteenth Amendment to the Federal Constitution. His equal protection challenge is based upon the application of former 19

---

[3] Section 721 of the Penal Code, *formerly* 18 P.S. §4721 (repealed). A similar provision is now found at Section 3121 of the Crimes Code, 18 Pa. C. S. §3121.

[4] P.L. 2093, *formerly,* 19 P.S. §897, suspended by Section 2(a) [1202] of the Act of April 28, 1978, P.L. 202. 19 P.S. §897 provided that:

Whenever, after the effective date of this Act, two or more sentences to run consecutively are imposed by any court of this Commonwealth upon any person convicted of crime therein, there shall be deemed to be imposed upon such person a sentence the minimum of which shall be the total minimum limits of the several sentences so imposed, and the maximum of which shall be the total of the maximum limits of such sentence.

A similar provision is now found at Section 9757 of the Sentencing Code, 42 Pa. C. S. §9757. *See also Commonwealth v. Green*, 312 Pa. Superior Ct. 265, 458 A.2d 951 (1983).

322

P.S. §897 only to sentences imposed at the same time by the same court. Had his two sentences been imposed by two different courts or on two different days, he argues, his maximum term expiration date would be shortened by five years to January 28, 1995 rather than January 28, 2000.

On these facts, Jamieson is clearly not entitled to a writ of mandamus. It is a well-settled proposition that mandamus is an extraordinary writ which is available only to compel the performance of a ministerial act or a mandatory duty where there exists a clear legal right in the plaintiff, a corresponding duty in the defendant, and the want of any other adequate and appropriate remedy. *Unger v. Hampton Township,* 437 Pa. 399, 263 A.2d 385 (1970); *Donnell v. Pennsylvania Board of Probation and Parole,* 61 Pa. Commonwealth Ct. 517, 434 A.2d 846 (1981). Jamieson concedes that the Board acted properly under former 19 P.S. §897 when it aggregated his two sentences. Jamieson's challenge, therefore, is not to the Board's computation of his maximum term under former 19 P.S. §897, his challenge is to the constitutionality of that statute as applied to him. In essence, what he is attempting to do by his mandamus action is to compel the Board to treat his two Erie County sentences as two separate consecutive sentences in violation of the mandate of former 19 P.S. §897. This is not a proper use of mandamus. The purpose of mandamus is not to establish legal rights, but to enforce those rights which are already established. *Hamm v. Board of Education for the School District of Philadelphia,* 79 Pa. Commonwealth Ct. 547, 470 A.2d 189 (1984). It is clear that the use of mandamus to compel public officials to act in violation of a statutory duty is not the proper procedure for testing the constitutionality of a statute. *Booz v. Reed,* 398 Pa. 172, 157 A.2d 170 (1960). Ab-

sent a prior judicial invalidation of former 19 P.S. §897, Jamieson's right to have his two Erie County sentences treated as separate consecutive sentences is not clear and mandamus is inappropriate. *See Unger.* As we noted in *Hamm,* we are bound by our Supreme Court's reasoning in *Philadelphia Presbytery Homes, Inc. v. Abington Board of Commissioners,* 440 Pa. 299, 269 A.2d 871 (1970), wherein Justice POMEROY wrote:

> [W]here it is necessary to establish the invalidity of an ordinance before the right sought to be vindicated by the plaintiff in mandamus can be said to exist, the right is not sufficiently "clear" to form the basis upon which to issue the writ.

*Id.* at 303, 269 A.2d at 873. Therefore, Jamieson is not entitled to a writ of mandamus in that his right to the relief he seeks is not sufficiently "clear."

Our determination that Jamieson has not stated a proper cause in mandamus does not require that we dismiss his action.[5] As noted by Judge BLATT in *Jamieson I,* the allegations of his complaint stated an equal protection claim sufficient to survive the Board's demurrer. However, rather than being an action properly addressed to our original jurisdiction, his equal protection challenge is an appeal from a determination of a Commonwealth administrative agency addressed to our appellate jurisdiction.[6] Accordingly,

---

[5] We transfer this matter *sua sponte* from our original jurisdiction to our appellate jurisdiction by virtue of Section 5103(c) of the Judicial Code, 42 Pa. C. S. §5103(c). That section authorizes the transfer of matters erroneously filed in one division of a court to the correct division rather than dismissing or quashing the action. Also, Section 708(c) of the Judicial Code, 42 Pa. C. S. §708(c), provides that if a mandamus action turns out not to be the proper mode of relief, then the action shall be regarded and acted upon as an appeal from the determination of the governmental agency.

[6] Section 763 of the Judicial Code, 42 Pa. C. S. §763.

324

we shall treat his motion for summary judgment as a motion for summary relief under Pa. R.A.P. 1532-(b).[7]

The Board now contends that since Jamieson was not paroled on *any* of his 1970 Erie County sentences until January 28, 1985, the expiration of his aggregated minimum term, a ruling by this Court that those sentences should not have been aggregated would have no practical or legal effect upon those sentences.[8] See *Cunningham v. Pennsylvania Board of Probation and Parole*, 39 Pa. Commonwealth Ct. 229, 394 A.2d

---

[7] We duly note our recent decisions which require the exhaustion of administrative remedies with the Board before a right to judicial review of a Board order arises. See *St. Clair v. Pennsylvania Board of Probation and Parole*, 89 Pa. Commonwealth Ct. 561, 493 A.2d 146 (1985); *Krantz v. Pennsylvania Board of Probation and Parole*, 86 Pa. Commonwealth Ct. 38, 483 A.2d 1044 (1984); *Lantzy v. Pennsylvania Board of Probation and Parole*, 82 Pa. Commonwealth Ct. 626, 477 A.2d 18 (1984). However, the exhaustion doctrine is only applicable where there exists an adequate administrative remedy. *Shenango Valley Osteopathic Hospital v. Department of Health*, 499 Pa. 39, 451 A.2d 434 (1982). The only available administrative remedy with the Board is the administrative relief provision contained in 37 Pa. Code §71.5(h). That provision is applicable only to Board parole *revocation* orders. *Counts v. Pennsylvania Board of Probation and Parole*, 87 Pa. Commonwealth Ct. 277, 487 A.2d 450 (1985); The order from which Jamieson appeals is his parole *release* order, more specifically, that portion of the release order which calculates his aggregated maximum term expiration date. Since this action does not involve a parole revocation order, the administrative relief provision of 37 Pa. Code §71.5(h) is not applicable and Jamieson does not have an available administrative remedy with the Board. Therefore, the exhaustion doctrine is not applicable in this case and Jamieson's failure to first seek redress from the Board does not preclude our reaching the merits of his equal protection claim.

[8] The record is not clear as to which of Jamieson's 1970 sentences would be served first if they were not aggregated. Jamieson argues that his five to ten year sentence was to be served first while the Board contends that the ten to twenty year sentence was to be the initial sentence.

1315 (1978) (parolee's challenge to the aggregation of his multiple sentences made after parole was granted following the expiration of his aggregated minimum term came too late to be of any practical or legal effect as to those sentences). Accordingly, the Board argues that this issue is now moot as to Jamieson and we need not address the merits of his equal protection challenge. We disagree.

We agree with the Board's argument that under Pennsylvania law, a prisoner does not have a constitutional right to parole, automatically upon the expiration of his minimum term and that the granting of parole is a matter of grace and administrative discretion. *Commonwealth v. Brittingham,* 442 Pa. 241, 275 A.2d 83 (1971); *Counts v. Pennsylvania Board of Probation and Parole,* 87 Pa. Commonwealth Ct. 277, 487 A.2d 450 (1985). However, a prisoner does have the right to *apply* for parole upon the expiration of his minimum term and have *that* application fairly *considered* by the Board. *Krantz v. Pennsylvania Board of Probation and Parole,* 86 Pa. Commonwealth Ct. 38, 483 A. 2d 1044 (1984); *Banks v. Pennsylvania Board of Probation and Parole,* 4 Pa. Commonwealth Ct. 197 (1971). Under his aggregated sentence, Jamieson was not permitted even to *apply* for parole upon the expiration of his first minimum term and there is no indication in the record that he would not have been paroled at that time.[9] Also, our resolution of his

[9] The Board argues that it cannot be presumed that Jamieson would have indeed been paroled had he applied at the minimum term of his initial, unaggregated, sentence. The Board also alleges that Jamieson had accumulated a total of twelve misconducts during his period of incarceration by which the Board seems to say that it would not have paroled him prior to January 1985. However, these alleged misconducts are not part of the record before us nor is the issue of whether Jamieson should have been granted parole earlier than January 1985. The narrow issue before us is

equal protection challenge could have an impact upon his ultimate maximum term expiration date and the amount of time he is under the Board's supervision.[10] Therefore, his appeal is not moot and the issue is ripe for our consideration.

We shall now turn to the merits of Jamieson's equal protection challenge to former 19 P.S. §897. An extensive discussion of the mechanics of this statute as well as Jamieson's equal protection challenge appears in Judge BLATT's opinion in *Jamieson I* and need not be repeated at length here. *See* 83 Pa. Commonwealth Ct. at 548-550, 478 A.2d at 153-155. The

whether his sentences were unconstitutionally aggregated and whether he should have been allowed to *apply* for parole earlier than January 1985 and have that application *considered* by the Board.

[10] We do note that in the event Jamieson prevails on his equal protection challenge to former 19 P.S. §897, he may be subject to spending an additional five years in prison serving the remainder of the minimum term of the second consecutive unaggregated sentence. The Board's grant of parole effective January 28, 1985 applies to only *one* of his two Erie County sentences. If the five to ten year sentence commenced first, then that sentence expired on January 28, 1980 leaving Jamieson to commence the initial ten year minimum term of his second sentence. That minimum term would not expire, rendering him eligible to be released from prison on parole, until January 28, 1990. If the ten to twenty year sentence was served first, he was paroled as to *that sentence only* by the Board grant of parole effective January 28, 1985 and he would be required to commence service of the minimum term of his five to ten year sentence. Again, that would render him eligible for release on parole not earlier than January 28, 1990. If the five to ten year sentence was to be served first, his maximum would still remain at January 28, 2000. If the ten to twenty year sentence was the initial sentence, his unaggregated maximum term would be reduced to January 28, 1995. The ideal time for Jamieson to have challenged the aggregation of his sentences was at the expiration of the minimum term of one of his two sentences by a declaratory judgment action to declare former 19 P.S. §897 unconstitutional and that he had a right to apply for parole on one of those sentences. In that way, he could have avoided facing the somewhat bizarre result outlined above.

essence of his contention is that former 19 P.S. §897, as applied by our Superior Court's decision in *Commonwealth ex rel. Lycett v. Ashe,* 145 Pa. Superior Ct. 26, 20 A.2d 881 (1941) (statute applies only to two or more consecutive sentences imposed at the same time by the same court), treats two similarly situated individuals differently depending solely upon when and by whom they were sentenced. An individual, such as Jamieson, whose sentences were aggregated under the statute, would have a longer total maximum term than would an individual who has consecutive sentences which are not aggregated. This difference is due to the availability of "constructive parole"[11] to the individual with consecutive sentences which allows a partial overlap of those sentences. Jamieson contends that this disparate treatment of similarly situated offenders bears no rational relationship to any legitimate state objective and thus violates the guarantee of equal protection contained in the Fourteenth Amendment to the Federal Constitution. This issue seems to be one of first impression.

We begin our analysis of Jamieson's constitutional challenge with the well-settled principle that enactments of the General Assembly enjoy a strong presumption of constitutionality and that a statute will not be declared unconstitutional unless it clearly, palpably and plainly violates either the Federal or Pennsylvania Constitution. *United States v. Geller,* 560 F. Supp. 1309 (E.D. Pa. 1983); *Hayes v. Erie Insur-*

---

[11] "Constructive parole" occurs when a prisoner has unaggregated consecutive sentences and is paroled on the first sentence and immediately begins serving the minimum term of the second sentence rather than being released from confinement. At that time, the prisoner is actually serving two sentences at the same time; he is incarcerated on the second sentence and on parole from the first sentence. *See Debnam v. Pennsylvania Board of Probation and Parole,* 71 Pa. Commonwealth Ct. 572, 455 A.2d 297 (1983).

*ance Exchange,* 493 Pa. 150, 425 A.2d 419 (1981). Any party challenging the constitutionality of a statute bears a heavy burden and a court must resolve any doubts in favor of sustaining the statute's constitutionality. *Daly v. Pennsylvania Horse Racing Commission,* 38 Pa. Commonwealth Ct. 77, 391 A.2d 1134 (1978); *Singer v. Sheppard,* 33 Pa. Commonwealth Ct. 276, 381 A.2d 1007 (1978).

The equal protection clause of the Fourteenth Amendment does not require that the state deal with all persons in an identical manner. *Williams v. Rhodes,* 393 U.S. 23 (1968); *United States ex rel. Souder v. Watson,* 413 F. Supp. 711 (M.D. Pa. 1976); *Stottlemyer v. Stottlemyer,* 458 Pa. 503, 329 A.2d 892 (1974). Legislative classifications will only be subject to strict judicial scrutiny, requiring a compelling state interest to pass muster, if the classification involves a fundamental right or a suspect class. Otherwise, the classification will pass constitutional muster if it bears some rational relationship to a legitimate state purpose. *Benner v. Oswald,* 592 F.2d 174 (3d Cir. 1979), *cert. denied,* 444 U.S. 832 (1979). We are satisfied that the statute challenged here neither involves a fundamental right[12] nor do convicted offenders who receive consecutive sentences at the same time in the same court qualify as a "discrete and insular group" in need of extraordinary protection from the majoritarian political process. *Cf. Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307

---

[12] Our research leads us to conclude that a prisoner does not have a fundamental right to the manner in which he serves consecutive sentences which were legally imposed following a criminal prosecution. *See United States ex rel. Bennett v. Prasse,* 408 F. Supp. 988 (E.D. Pa. 1976) (no fundamental right to a security classification within correctional institutions); *see also Stinson v. Nelson,* 525 F.2d 728 (9th Cir. 1975) (no fundamental right to serve legally-imposed sentence in any particular correctional institution).

(1976) (traditional "suspect" classes are race, alienage, and ancestry, among others, but do not include age). Therefore, in order to be found constitutional, the classification set forth in former 19 P.S. §897 need only be shown to bear some rational relationship to a legitimate state objective. We think it does.

In *Commonwealth ex rel. McGinnis v. Ashe*, 330 Pa. 289, 199 A. 185 (1938), the Pennsylvania Supreme Court found that former 19 P.S. §897 provides corrections authorities with the statutory authority to lump two or more consecutive sentences into one. The Court noted that while multiple consecutive sentences have always been imposed separately, the General Assembly could mandate that they be treated as one and, by enacting former 19 P.S. §897, did so. The General Assembly, by enacting this statute, was directly responding to a prior Pennsylvania Supreme Court case in which the Court held that, under the Act of June 19, 1911 (Parole Act of 1911), P.L. 1055, *as amended,* repealed by the Act of April 28, 1978, P.L. 202, a prisoner with consecutive sentences must apply for constructive parole at the expiration of *each* sentence in order to commence serving the next consecutive sentence. In *Commonwealth ex rel. Lynch v. Ashe*, 320 Pa. 341, 182 A. 229 (1936), the Court held that a prisoner was only entitled to *apply* for parole at the expiration of his initial minimum term. Only if that application was favorably acted upon by the Board would the prisoner commence serving his second sentence. Otherwise, the prisoner would have been deemed to have served the maximum term of the initial sentence before he commences serving the second sentence. *Id.* at 343-344, 182 A. at 230.

The Superior Court, in *Lycett*, specifically found that it is within the province of the General Assembly to classify crimes and to fix the minimum and maxi-

mum punishments for such crimes. The necessity or wisdom of such acts is a question for the General Assembly's determination and that such act did not violate Article V, §1, of the Constitution of 1874 which vested the judicial power of the Commonwealth in the courts. 145 Pa. Superior Ct. at 28-29, 20 A.2d at 883. The purpose, then, of former 19 P.S. §897 was to overrule the Supreme Court's decision in *Lynch* and to require prisoners with multiple consecutive sentences to apply for parole only once at the expiration of their aggregated minimum term while also preserving the original maximum terms of those multiple sentences. While the Superior Court in *Lycett* did not specifically address Jamieson's equal protection concerns, we feel that the discussion of the reasons why former 19 P.S. §897 was enacted by the General Assembly is instructive for our disposition of that issue.

The purpose of former 19 P.S. §897 was to allow corrections authorities to combine multiple consecutive sentences as a single sentence for purposes of parole eligibility and to preclude the necessity of prisoners having to apply for constructive parole at the expiration of each of their various minimum terms and relieved the Board from having to act on those multiple parole applications. While noting that a prisoner's actual sentence is the maximum term imposed by the trial court, *McClure v. Pennsylvania Board of Probation and Parole*, 75 Pa. Commonwealth Ct. 176, 461 A.2d 645 (1983), former 19 P.S. §897 specifically preserves the various maximum terms of the aggregated sentences.

We likewise have no argument with the applicability of former 19 P.S. §897 to prisoners whose consecutive sentences were imposed by the same court while being inapplicable to those prisoners whose consecutive sentences were imposed by different courts.

*See Lycett,* 145 Pa. Superior Ct. at 31, 20 A.2d at 884. The General Assembly can treat individuals who commit multiple offenses within a single jurisdiction differently from those whose offenses span multiple jurisdictions without violating equal protection. While the judiciary may not agree with the conclusions reached by the General Assembly, the issue is one for its determination and we cannot hold that its resolution of the issue is irrational. Accordingly, we find that former 19 P.S. §897 bears a rational relationship to a legitimate state objective, namely that of effective administration of the corrections and parole system while also preserving the integrity of consecutive sentences imposed by the trial court, and that, therefore, Jamieson's equal protection challenge to former 19 P.S. §897 must fail.

Having found no violation of Jamieson's constitutional rights nor error of law committed by the Board, we shall affirm the Board's order.

## ORDER

AND Now, this 2nd day of July, 1985, the action in mandamus filed by Joseph Jamieson shall be treated as a petition for review from a determination of a Commonwealth agency addressed to our appellate jurisdiction under 42 Pa. C. S. §763 and the motion for summary judgment filed by him shall be treated as a motion for summary relief under Pa. R.A.P. 1532(b). Upon consideration of the merits, Joseph Jamieson's motion for summary relief is denied and the order of the Pennsylvania Board of Probation and Parole, which calculated the aggregated maximum term expiration date of his aggregated Erie County sentences at January 28, 2000, is hereby affirmed.