532 A.2d 900

William C. Mueller, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania State Police Headquarters, et al., Respondents.

Submitted on briefs June 16, 1987, to Judges CRAIG, PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*William C. Mueller,* petitioner, for himself.

*Francis R. Filipi,* Senior Deputy Attorney General, with him, *Andrew S. Gordon,* Chief Deputy Attorney

General, *LeRoy S. Zimmerman,* Attorney General, for respondents.

OPINION BY SENIOR JUDGE BARBIERI, October 15, 1987:

William C. Mueller, Petitioner, has commenced an action in mandamus and for declaratory judgment addressed to our original jurisdiction.[1] Named as Respondents in this action are Glen R. Jeffes, Commissioner of Corrections of the Commonwealth of Pennsylvania,[2] the Department of Corrections (Department), Pennsylvania State Police Headquarters, and Major Francis T. Lynch, Director of Criminal Investigations, Pennsylvania State Police. Mueller claims that the Respondents failed to perform certain duties owed to him under a Department Administrative Directive, specifically that portion of BC-ADM 004 dealing with criminal complaints of prison inmates. The Respondents have filed preliminary objections in the nature of a demurrer to his petition for review. It is those preliminary objections that are presently before this Court for disposition.

When faced with a demurrer, the pertinent inquiry for a reviewing court is to determine whether the petitioner has stated on the face of his petition a cause of action that, if proved, would entitle him to relief. *Gillespie v. Department of Corrections,* 106 Pa. Commonwealth Ct. 500, 527 A.2d 1061 (1987). In disposing of a demurrer, every well-pleaded, material, relevant fact, and all reasonable inferences to be drawn therefrom, but not conclusions of law, are deemed to be admitted. *Byers v. Ward,* 368 Pa. 416, 84 A.2d 307

---

[1] Section 761(a)(1) of the Judicial Code, 42 Pa. C. S. §761(a)(1).

[2] Glen R. Jeffes is no longer the Commonwealth's Commissioner of Corrections. The current Commissioner of Corrections is David S. Owens, Jr.

(1951). While pleadings filed by pro se litigants are to be construed liberally, a pro se litigant is not to be given any particular advantage because of his lack of knowledge of the law. *Commonwealth v. Lamb*, 12 Pa. Commonwealth Ct. 508, 316 A.2d 148 (1974). It is only where the petition is clear on its face that the petitioner's claim cannot be sustained, and that the law will not permit the relief that the petitioner seeks, will the demurrer be sustained. *Buckley & Co., Inc. v. Department of Transportation*, 34 Pa. Commonwealth Ct. 182, 382 A.2d 1298 (1978).

Thus viewed, Mueller's petition for review establishes the following facts for purposes of reviewing the demurrer. Mueller is an inmate currently incarcerated at the State Correctional Institution at Pittsburgh (SCI-Pittsburgh) and is currently in the Restrictive Housing Unit (RHU)[3] as a result of a prison misconduct. The prison misconduct arose out of an incident that occurred on December 10, 1986. Mueller was assigned to the Print Shop at SCI-Pittsburgh where he was using a screwdriver to work on a printing press. At the end of the work day, he returned to his cell with the screwdriver in his back pocket, unbeknownst to him. Upon his return to his cell, Mueller's cellmate noticed the screwdriver in his pants pocket. Almost simultane-

---

[3] The Restrictive Housing Unit (RHU) is that portion of a state correctional institution or facility that is used to house inmates who are guilty of disciplinary infractions or who request to be so housed for reasons of personal security. *See* 37 Pa. Code §93.11(b). Inmates confined in the RHU are subject to more severe restrictions and security and have less privileges than do inmates in the institution's general population. Additionally, inmates confined in RHU cannot hold down an institution job. The RHU at SCI-Pittsburgh consists of two areas, A-Block or A-Range and the Isolation Area. Petitioner is confined in the A-Block area as a result of his misconduct hearing. For the sake of simplicity, we shall refer to any such area simply as the RHU.

ously, several corrections officers appeared at his cell and opened the cell door. Mueller turned over the screwdriver to one of the corrections officers and asked that he inform the Print and Shoe Shop Supervisor that he had accidently taken it from the Print Shop. During a body and cell search, corrections officers confiscated a television Mueller had received from another inmate who had previously been released from SCI-Pittsburgh. As a result of his possession of the screwdriver and television, Mueller was charged with a prison misconduct and a hearing was held before a hearing examiner on December 12, 1986, at SCI-Pittsburgh. The hearing examiner denied his request to have the Print and Shoe Shop Supervisor present at the hearing. Following the hearing, the hearing examiner found him guilty of possession of contraband; lying to an employee; and failure to report contraband. As a result, he was sentenced to spend ninety days in RHU and removed from his institution job at SCI-Pittsburgh. Mueller filed an appeal of his misconduct with the Misconduct Hearing Program Review Committee (PRC) as well as a complaint with the Inmate Grievance System.[4] He also filed a request to the Superintendent of SCI-Pittsburgh to file a

---

[4] The Department's Inmate Grievance System is established under 37 Pa. Code §93.9. The grievance system is designed to review and resolve any problems that an inmate experiences during his incarceration. The Department, through this system, attempts to resolve inmate complaints at the institution level although there is an appeal available to the Commissioner should the inmate be dissatisfied with the institution's resolution. In *Waters v. Department of Corrections*, 97 Pa. Commonwealth Ct. 283, 509 A.2d 430 (1986), we found that this system provides inmates with an adequate and meaningful administrative remedy. This system is designed to handle complaints from inmates arising from their confinement other than disciplinary matters. There is a separate appeal procedure for appealing findings of misconduct hearings. *See* 37 Pa. Code §93.10(b)(6).

criminal complaint against the hearing examiner for various criminal offenses related to the examiner's dealing with his misconduct hearing. The complaint filed with the Inmate Grievance System was dismissed as being outside of the jurisdiction of the grievance system. The Superintendent of SCI-Pittsburgh did not commence any criminal charges against the examiner, nor did the Pennsylvania State Police, to whom Mueller also sent a copy of his request for a criminal complaint. The PRC affirmed the hearing examiner's finding on December 30, 1986, and Mueller filed an appeal to the Superintendent of SCI-Pittsburgh. There is no allegation concerning the outcome of that appeal.

### Claim in Mandamus

We shall first review the demurrer to Mueller's complaint in mandamus.[5] In his request for mandamus relief, he seeks an order of this Court to compel Commissioner Jeffes and Major Lynch to file criminal complaints based upon information imparted to them by inmates exercising their rights under BC-ADM 004. He also claims that he is entitled to a writ or injunction requiring the Commissioner to vacate the result of his misconduct hearing and to expunge his prison disciplinary record.

To state a valid claim in mandamus, Mueller is required to show (1) a ministerial act or mandatory duty on the part of the Respondents; (2) a clear legal right in him to the relief he seeks; (3) a clear corresponding duty in the Respondents to provide him that relief; and (4) the lack of any other adequate and appropriate remedy.

---

[5] While Mueller labeled these claims for relief as sounding in declaratory judgment, by order dated January 27, 1987, we determined that they properly sounded in mandamus and would be so treated.

*See County of Allegheny v. Commonwealth,* 507 Pa. 360, 490 A.2d 402 (1985); *Jamieson v. Pennsylvania Board of Probation and Parole,* 90 Pa. Commonwealth Ct. 318, 495 A.2d 623 (1985). Mandamus is an extraordinary writ that is only available to enforce already established clear and specific rights, it cannot be used to establish those rights. *See Equitable Gas Co. v. City of Pittsburgh,* 507 Pa. 53, 488 A.2d 270 (1985); *Hamm v. Board of Education of the School District of Philadelphia,* 79 Pa. Commonwealth Ct. 547, 470 A.2d 189 (1984).

The gravamen of Mueller's initial mandamus claim is that Respondent Jeffes failed to file a criminal complaint and that Respondent Lynch failed to initiate a criminal investigation upon receipt of his self-styled affidavit of probable cause. The affidavit contained allegations of criminal conduct on the part of several corrections officers and officials at SCI-Pittsburgh during the December 10, 1986, search of his cell and his December 12, 1986, misconduct hearing. Mueller claims that BC-ADM 004 creates a right in him and a duty in the Respondents to file criminal complaints and initiate criminal investigations upon receipt of a statement of probable cause from an inmate. We respectfully disagree.

The pertinent provision of BC-ADM 004 relating to criminal charges being filed by inmates provides:

> A.   Each inmate shall be informed, upon reception, and otherwise by notice in the inmate handbook of his right to make a criminal complaint for any criminal act, threatened or committed against him by anyone.

This provision of BC-ADM 004 clearly does not support the right that Mueller now wishes to enforce in this Court. The only duty imposed upon anyone by this directive is to inform inmates that they, like any other citizen, have the right to make a criminal complaint with

regard to criminal acts committed against them by any other person. The directive does not require the Commissioner, or any other Department employee, to initiate or file a criminal complaint with an issuing authority. Additionally, a Department directive cannot impose any duties upon members of the Pennsylvania State Police as they are members of a separate and distinct entity that is not under the jurisdiction of the Department nor subject to its directives or regulations. Thus, Mueller has failed to show a duty on the part of Respondent Lynch as he is not under the jurisdiction of the Department nor subject to BC-ADM 004. Mueller has failed to show a duty on the part of the Commissioner as the above quoted provision of BC-ADM 004 only places upon the Department the duty to inform, not to act.[6] Mueller does not allege that the Department has failed to provide this information to inmates under its jurisdiction.

---

[6] It is also unclear whether the Commissioner or Department officials have the authority to file criminal complaints with issuing authorities. The Rules of Criminal Procedure limit that right to "law enforcement officers." *See* Pa. R. Crim. P. 101 and 133. Private citizens may file criminal complaints only after they have been approved by the local district attorney. *See Commonwealth v. Eisemann,* 308 Pa. Superior Ct. 16, 453 A.2d 1045 (1982); Pa. R. Crim. P. 133. "Law enforcement officer" is defined by Pa. R. Crim. P. 3(1) as "any person who is by law given the power to enforce the law when acting in the scope of that person's employment." While county prison wardens and corrections officers are vested with police powers in the performance of their duties by Section 2.1 of the Act of May 16, 1921, P.L. 579, reenacted by the Act of January 25, 1966, P.L. (1965) 1577, *as amended,* 61 P.S. §409.1, no such authority or power is granted to superintendents or corrections officials at state correctional institutions. As we have determined that under BC-ADM 004 there is no duty for anyone to file criminal complaints upon receipt of a complaint from an inmate, we need not determine whether the Commissioner and the institutional staff of state correctional institutions are "law enforcement officers" with-

The other mandamus claim pressed by Mueller is for the reversal of the result of his misconduct hearing and the expungement of his disciplinary record at SCI-Pittsburgh. We note that the Department's regulations provide an administrative appeal process for inmates who are dissatisfied with the result of prison misconduct hearings. *See* 37 Pa. Code §93.10(b)(6). Mueller alleges that he availed himself of this process through an appeal to the PRC at SCI-Pittsburgh and a further appeal to the institution Superintendent. At the time he filed his action in this Court, the appeal process had not yet run its course. Mueller's appeal to the Superintendent was filed on January 4, 1987, and he filed his petition for review with this Court on January 14, 1987, ten days later. There is no allegation that the Superintendent denied his appeal or whether he filed an appeal from the Superintendent's decision with the Commissioner. The existence of available administrative remedies that are adequate and meaningful is a bar to a mandamus action. *Waters v. Department of Corrections,* 97 Pa. Commonwealth Ct. 283, 509 A.2d 430 (1986). Additionally, the failure to exhaust available administrative remedies will bar an action in mandamus. *St. Clair v. Pennsylvania Board of Probation and Parole,* 89 Pa. Commonwealth Ct. 561, 493 A.2d 146 (1985). Despite Mueller's protestations to the contrary, our review of the appeal process provided by the Department from decisions of misconduct hearings satisfies us that it provides inmates an ad-

in the meaning of Pa. R. Crim. P. 3(1) so as to be authorized to file criminal complaints with issuing authorities. We do note, however, as a matter of written policy, the Department has all criminal complaints originating in state correctional institutions filed by the Pennsylvania State Police. In any event, Mueller can make a criminal complaint and forward it directly to the Allegheny County district attorney who may either approve it or disapprove it. *See* Pa. R. Crim. P. 133. There is no indication in the record that he ever attempted to avail himself of this procedure.

equate and meaningful remedy that must be exhausted prior to seeking judicial intervention. Mueller's bare assertion that the PRC and the appeal process in general is meaningless due to a reluctance of prison officials to find that other prison officials erred is unconvincing.

In view of the foregoing, we shall sustain Respondent's demurrer to Mueller's mandamus claims.

## Claim for Declaratory Judgment

Mueller also seeks a declaratory judgment from this Court as to his rights under BC-ADM 004 and the legal effect of certain actions by Department personnel. He also seeks an assessment by this Court of compensatory and punitive damages against the Department as a result of alleged illegal conduct by Department employees.

The purpose of the Declaratory Judgments Act, 42 Pa. C. S. §§7531-7541, is to afford relief from uncertainty and insecurity with respect to legal rights, status and other relations. *Fidelity Bank v. Pennsylvania Turnpike Commission*, 498 Pa. 80, 444 A.2d 1154 (1982). Section 7532 of the Declaratory Judgments Act, 42 Pa. C. S. §7532, defines the scope of declaratory relief to *declaring* the rights, status, and other legal relations of the parties. The assessment of compensatory and punitive damages resulting from allegedly wrongful acts of Commonwealth employees is clearly outside of the scope of the Declaratory Judgments Act. Therefore, the demurrer to Mueller's claim for assessment of damages must be sustained.

One of Mueller's claims for declaratory relief requests a finding that certain actions by officials at SCI-Pittsburgh violated his rights to due process of law and the guarantee against cruel and unusual punishment. None of the officials about whose actions he complains is named as a respondent in this action.

These officials, various corrections officers and officials at SCI-Pittsburgh, have an interest in the resolution of this question since they could be held pecuniarily liable for damages if it is found that they violated Mueller's constitutional rights. *See* 42 U.S.C. §1983. The Pennsylvania Supreme Court has consistently held that a declaratory judgment action would not lie where all interested parties have not been joined. *See e.g., Mains v. Fulton,* 423 Pa. 520, 224 A.2d 195 (1966); *Petition of Kariher,* 284 Pa. 455, 131 A. 265 (1925). Additionally, the joinder of those absent interested parties would not allow Mueller to make out a valid declaratory judgment claim in this Court. The absent interested parties are all Department employees who are assigned to SCI-Pittsburgh. In order for a court to entertain a declaratory judgment action, it must have subject matter jurisdiction. *Kariher; Fawber v. Cohen,* 91 Pa. Commonwealth Ct. 559, 497 A.2d 697 (1985). As we noted in *St. Clair,* this Court's original jurisdiction is strictly limited by statute to causes asserted against an officer of the Commonwealth acting in his official capacity. 89 Pa. Commonwealth Ct. at 565, 493 A.2d at 150. In *Mickens v. Jeffes,* 71 Pa. Commonwealth Ct. 68, 453 A.2d 1092 (1983), we held that a superintendent of a state correctional institution is not an "officer of the Commonwealth" within the meaning of 42 Pa. C. S. §761 and, therefore, this Court lacks jurisdiction over him. In *Gillespie,* we held that same lack of jurisdiction applies to other Department employees working at state correctional institutions. 106 Pa. Commonwealth Ct. at 502 n. 2, 527 A.2d at 1062 n. 2. As we lack jurisdiction over the missing interested parties, we would be unable to entertain Mueller's declaratory judgment action even if those parties were joined. Thus, we must sustain the demurrer to this claim.

Mueller's final declaratory judgment claim is his request that we construe the previously quoted provision of BC-ADM 004 as vesting in him a liberty interest and guaranteeing against the arbitrary infliction of cruel and unusual punishment. While Section 7533 of the Declaratory Judgments Act, 42 Pa. C. S. §7533, specifically permits a person interested in a document, such as the administrative directive at issue here, to obtain a judicial construction of and a declaration of rights under that document, Section 7536 of the Declaratory Judgments Act, 42 Pa. C. S. §7536, provides that declaratory relief is proper where a judgment or decree will terminate the controversy or remove an uncertainty. There is no uncertainty or controversy to be resolved pertaining to that portion of BC-ADM 004 at issue here. Mueller does not specify what "liberty interest" he claims the directive creates nor can we discern one. The directive does not create a guarantee of freedom from the imposition of cruel and unusual punishment since that guarantee is already provided by the Eighth Amendment to the Federal Constitution as well as Article 1, §13, of the Constitution of the Commonwealth of Pennsylvania. Additionally, the portion of BC-ADM 004 upon which Mueller relies does not even address the issue of punishments. Accordingly, there is no uncertainty or controversy that a declaratory judgment decree or order would resolve. In view of the foregoing, we must sustain the demurrer to this declaratory judgment claim.

Having sustained the Respondents' demurrer to all of the claims in mandamus and declaratory judgment raised by Mueller, we shall dismiss his petition for review.

### ORDER

Now, October 15, 1987, upon consideration of the Preliminary Objections of Respondents to the Petition

for Review filed by William C. Mueller, Petitioner, said Preliminary Objections are hereby sustained and the Petition for Review is hereby dismissed for failing to state a claim upon which relief may be granted.