Inmates of B-Block and Individually, David Chacko et al., Petitioners *v.* Glen R. Jeffes et al., Respondents.

276

Argued November 14, 1983, before Judges WILLIAMS, JR., CRAIG and BLATT, sitting as a panel of three.

*Richard G. Fishman,* with him *James P. Johnson,* for petitioners.

*Gregory R. Neuhauser,* Deputy Attorney General, with him *Allen C. Warshaw,* Deputy Attorney General, and *LeRoy S. Zimmerman,* Attorney General, for respondents.

OPINION BY JUDGE BLATT, December 30, 1983:

This case comes here after orders from this Court dismissing constitutional claims filed by the petitioners and granting their request for a writ of mandamus (by our order dated April 29, 1983) and subsequently modifying that order as well as denying a petition to hold respondents in contempt (by our order dated August 16, 1983).

The petitioners are inmates at the Huntingdon State Correctional Institution, which is a maximum security facility located in Huntingdon County, Pennsylvania. They are quartered in the Restrictive Housing Unit of the Institution, which is known as B-Block. They sought relief in a class action suit in this Court's original jurisdiction, contending that the respondents, the Commissioner of the State Bureau of Corrections and the Superintendent of the Huntingdon facility, denied them exercise time in violation of both federal and state law. After a hearing during which evidence was presented, this Court, in an order dated April 29, 1983, dismissed the State and Federal constitutional claims and granted a writ of mandamus, which specifically directed the respondents to submit to the court within sixty days of the order a plan that could afford the petitioners, within sixty days of the Court's receipt and approval of the plan, at least one hour of out-of-cell exercise daily, and which could, by the

end of 1983, bring the facility into full compliance with the mandate of Section 1 of the Act of June 14, 1923 (Act), P.L. 775, 61 P.S. §101.[1] The respondents then petitioned us for a stay of the order, and we heard arguments, subsequently modifying the order in an order dated August 16, 1983, which required the respondents to submit in writing a specific and detailed plan setting forth the method by which they intended to comply with Section 1 of the Act, 61 P.S. §101 no later than October 1, 1983 and to provide the petitioners with at least two hours of out-of-cell exercise time daily which should begin not later than January 1, 1984. The petitioners' application for contempt was by the same order denied without prejudice. The instant exceptions, filed by both parties, ensued.

The petitioners have filed a total of thirty exceptions. Inasmuch, however, as we will sustain the order granting the writ of mandamus, we believe that exceptions numbered one through twenty-one and twenty-three through twenty-seven need not be addressed here. Our careful review of the record indicates that they contemplate issues upon which the petitioners have already prevailed, and we will, therefore, deny them without further comment. We will, however, address exceptions numbered twenty-two and twenty-eight through thirty in seriatim.

The petitioners contend that the failure of the respondents to provide exercise for the B-Block inmates amounts to cruel and unusual[2] punishment under both the Pennsylvania and the United States Constitutions. In support, they cite to *Estelle v. Gamble,* 429 U.S. 97

---

[1] Section 1 of the Act, 61 P.S. §101, of course, obviates this requirement if such exercise is determined to be *not* safe and practical. (See pages 281-82 of opinion for further discussion.)

[2] The Pennsylvania Constitution, however, deletes the adjective "unusual".

(1976), wherein the Supreme Court recognized a governmental obligation under the eighth amendment "to provide medical care for those whom it is punishing by incarceration," 429 U.S. at 103, but also recognized that "every claim by a prisoner that he has not received adequate medical treatment" is not a violation of the eighth amendment. *Id.* at 105. The Court then went on to conclude that "deliberate indifference to serious medical needs of prisoners" constitutes a violation of the eighth amendment, 429 U.S. at 104. We must decide here, therefore, whether or not the denial of exercise is of the type of indifference to serious medical needs contemplated in *Estelle.*

In *Bono v. Saxbe,* 620 F.2d 609, 614 (7th Cir. 1980) it was held that "[i]nactivity, . . . and a low level of intellectual stimulation do not constitute cruel and unusual punishment *even if they continue for an indefinite period of time. . ."* (emphasis added). *Newman v. Alabama,* 559 F.2d 283 (5th Cir. 1977), had earlier held that, if a State furnishes its prisoners with reasonably adequate food, clothing, shelter, sanitation, medical care, and personal safety, its obligation under the eighth amendment ends. We believe that *Bono* and *Newman* read together preclude a successful challenge by the petitioners for a denial of exercise does not rise to the level of indifference to serious medical needs contemplated in *Estelle.*

The petitioners further contend that we erred in granting a partial stay and modification of the Court's order dated April 29, 1983. In *Pennsylvania Public Utility Commission v. Process Gas Consumers Group,* Pa. , 467 A.2d 805 (No. 2 Misc. Docket 1983, filed August 23, 1983), our Supreme Court articulated the legal test for issuing a stay, which is as follows:

1. The petitioner makes a strong showing that he is likely to prevail on the merits;

2. The petitioner has shown that without the requested relief, he will suffer irreparable injury;

3. The issuance of a stay will not substantially harm other interested parties in the proceedings;

4. The issuance of a stay will not adversely affect the public interest.

*Id.* at , 467 A.2d at 808-9. In light of the unique relationship of the litigants in this action and the inherently dangerous environment upon which this controversy has its focus, we believe that the court was correct in granting a stay and modification of the original order.[3]

The petitioners contend finally[4] that we erred in denying their application to hold respondents in contempt and/or to adopt and enforce a substitute plan to comply with the order of April 29, 1983. We disagree. In *Thompson v. Johnson*, 410 F. Supp. 633 (E.D. Pa. 1976), *aff'd*, 556 F.2d 568 (3rd Cir. 1977), it was held that the exercise of the power to find and to punish for contempt is, however, discretionary, and should be undertaken with the utmost sense of re-

---

[3] The Court in *Process Consumer Group* recognized, furthermore, that even if a petitioner failed to make a showing that he was likely to prevail on the merits, which arguably is the case here, a stay could be ordered if the three other factors strongly favor interim relief, which we believe do. *Accord Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841 (D.C. Cir. 1977).

[4] We find no legal merit in petitioners' argument that Pa. R.C.P. No. 1515 or *Jackson v. Hendricks*, 457 Pa 405, 321 A2d 603 (1974) requires the court to appoint a master in this case and, therefore, dismiss this claim as well

sponsibility and circumspection. *See Sullivan v. Houston Independent School District,* 333 F. Supp. 1149 (S. D. Tex. 1971), *vacated on other grounds,* 475 F.2d 1071 (5th Cir. 1973), *cert. denied,* 414 U.S. 1032 (1973). Again, in light of the unique relationship of the litigants and the inherently dangerous environment upon which this controversy has its focus, we believe that our discretion was exercised properly in denying the contempt petition.[5]

The respondents claim that we erred in granting the writ of mandamus. In *Rizzo v. Schmanek,* 63 Pa. Commonwealth Ct. 547, 439 A.2d 1296 (1981), we held that "mandamus is an extraordinary legal remedy which will only issue to compel the performance of a ministerial act or a mandatory duty where the petitioner has a clear legal right, the respondent has a corresponding duty and there is no other appropriate and adequate remedy". *Id.* at 549, 439 A.2d at 1297. *See Coleman v. Board of Education of the School District of Philadelphia,* 477 Pa. 414, 383 A.2d 1275 (1978). Section 1 of the Act, 61 P.S. §101, provides in pertinent part as follows:

> Every warden, board of prison managers, prison inspectors, or any other person in authority, in charge of any prison or penitentiary, who may or shall have in charge any person confined therein whether such person be a tried or an untried prisoner, *shall provide that such person shall have at least two hours daily,* physical

---

[5] We reject, however, respondents' argument that the court lacked the power to rule on the contempt proceedings because exceptions have been filed. We believe that the correct rule of law, which is articulated in *City of Pittsburgh v. Brunwasser,* 40 Pa. Commonwealth Ct. 197, 396 A.2d 907 (1979), *aff'd sub nom., Brunwasser v. Fields,* 487 Pa. 283, 409 A.2d 352 (1979), *cert. denied,* 444 U.S. 967 (1979), could allow us to rule affirmatively in such a proceeding.

exercise in the open, weather permitting, and upon such days on which the weather is inclement, such person shall have two hours, daily, of physical exercise indoors of such prison or penitentiary: Provided, however, The same is safe and practical, and the judges of the several courts are to be the judges thereof.

We construe Section 1 of the Act to impose an affirmative duty on the prison officials to provide two hours of daily physical exercise, *Chacko v. Marks,* 61 Pa. Commonwealth Ct. 421, 434 A.2d 211 (1981).[6]

The respondents also contend that we erred in refusing to admit testimony into evidence concerning the dangerousness of the inmates, specifically, their criminal and psychiatric history and institutional misbehavior. Although the proviso in Section 1 of the Act, 61 P.S. §101 exempts correctional facilities from providing exercise if judges determine that it is not "safe and practical", the evidence offered here by the respondents for admission was irrevelant as it relates to the proviso. In one way or another, all inmates in correctional facilities may be considered dangerous to society, and Section 1 of the Act, 61 P.S. §101 assumes the dangerous propensities of the inmates. To offer evidence to reestablish this assumption, therefore, was irrelevant.[7]

---

[6] Although we agree that *Commonwealth ex rel. Bryant v. Hendrick,* 444 Pa. 83, 280 A.2d 110 (1971) and *Robson v. Biester,* 53 Pa. Commonwealth Ct. 587, 420 A.2d 9 (1980) militate against judicial interference with the operations of correctional facilities, both cases are distinguishable from the case *sub judice* inasmuch as statutory rights are at issue here whereas the aforementioned cases involved matters of discretion.

[7] It is interesting to note that B-Block is not comprised only of individuals with violent propensities [See the Transcript of Proceedings at 24-28].

Respondents next contend that we erred in allowing testimony regarding the general conditions of confinement: specifically, the unavailability of reading materials, the physical construction of the cells, and the overall conditions of confinement. The evidence offered and admitted at trial, however, was relevant to the issues advanced by the petitioners as to their claims under the eighth amendment to the United States Constitution and Article I, §13 of the Pennsylvania Constitution asserting cruel and unusual punishment violations. *See Hutto v. Finney,* 437 U.S. 678 (1978); *Bono; Newman.*[8]

As to the contention of the respondents that we erred in allocating the burden of proof under Section 1 of the Act, 61 P.S. §101, we would note that our order dated January 21, 1983 ruled that the petitioners would have the burden of proof concerning the issue of whether or not two hours of exercise was being provided, and that the respondents would have the burden of proof concerning the issue of whether or not such exercise could be provided safely and practically. In *Barrett v. Otis Elevator Company,* 431 Pa. 446, 246 A.2d 668 (1968), the Pennsylvania Supreme Court said, "If the existence or non-existence of a fact can be demonstrated by one party to a controversy much more easily than by the other party, the burden of proof may be placed on that party who can discharge it more easily." *Id.* at 452-3, 246 A.2d at 672. Considering the obvious knowledge of the respondents regarding the daily operation of the correctional facility, we believe that it was clearly con-

---

[8] We need not decide if the court erred in refusing to admit into evidence testimony on surrebuttal concerning the general conditions of confinement because the petitioners have not prevailed on this issue and, therefore, if an error occurred, it would be a harmless one.

sistent with *Barrett* to place the burden of proof upon them as to the issue of what would be "safe and practical".

The respondents argue also that findings of facts numbered 15 and 21 are not supported by the evidence. Findings of fact, however, should not be disturbed unless they are unsupported by the evidence and, furthermore, our review of the findings of the hearing judge is limited in scope to determining whether or not, upon a consideration of the evidence, a judge could reasonably reach the chancellor's conclusion. *Harrisburg School District v. Pennsylvania Interscholastic Athletic Association*, 453 Pa. 495, 309 A.2d 353 (1973). Here, finding of fact numbered 15 states that: "After February 7, 1983, ACM inmates were served all meals in their cells and were allowed showers only every other day, with the shower time included in the 35 minutes out-of-cell exercise time." Finding of fact numbered 21 states that: "Educational, recreational, work and other programs exist at Huntingdon, but are generally not available to B-Block inmates. At the time of the hearing, only 4 ACM inmates were on work programs; there were no B-Block inmates on any other such programs", and we believe that the record contains sufficient evidence to support the conclusions reached.[9]

## ORDER

AND Now, this 30th day of December, 1983, the exceptions filed by the above-captioned parties are hereby dismissed.

---

[9] See the Transcript of Proceedings at pp 13-14, 18, 22-23 as it relates to finding of fact 15, and pp. 16-17, 41-42, 123-125 as it relates to finding of fact 21.