522 A.2d 179

George Feigley, Petitioner v. Glen Jeffes, Commissioner of Corrections and Thomas A. Fulcomer, Superintendent of State Correctional Institution at Huntingdon, Respondents.

Submitted on briefs August 18, 1986, to President Judge CRUMLISH, JR., Judge COLINS, and Senior Judge BLATT, sitting as a panel of three.

*George Feigley*, petitioner, for himself.

*LeRoy S. Zimmerman*, Attorney General, with him, *Calvin R. Koons*, Deputy Attorney General, and *Andrew S. Gordon*, Chief Deputy Attorney General, Chief, Litigation Section, for respondents.

PER CURIAM OPINION, March 12, 1987:

George Feigley (petitioner) petitions for review in our original jurisdiction for a writ of mandamus[1] against Glen Jeffes, the Commissioner of the Bureau of Corrections[2] (Bureau), and Thomas A. Fulcomer, the Superintendent of the State Correctional Institution at Huntingdon (Huntingdon), where the petitioner is an inmate.[3] Jeffes and Fulcomer (respondents) have interposed preliminary objections to the petition for review and those preliminary objections are now before this Court.

## Count I

In the first count of his petition for review, the petitioner seeks a mandamus order to require the respondents to provide for medical screening of all food handlers at Huntingdon for the presence of Acquired Immune Deficiency Syndrome (AIDS) antibodies, and to require the respondents to enforce a Bureau of Corrections administrative directive, BC-ADM 610, relating to existing standards for medical screening of prison food handlers.

---

[1] By a *per curiam* order, dated June 12, 1986, this Court ordered that the instant petition for review should be treated as a petition for a writ of mandamus addressed to our original jurisdiction, Section 761 of the Judicial Code, 42 Pa. C. S. §761.

[2] Now, the Department of Corrections.

[3] This is the second petition for review which the petitioner, who is quartered in Huntingdon's restrictive housing unit (B-Block), has filed against the respondents in this controversy. In *Feigley v. Jeffes*, 97 Pa. Commonwealth Ct. 583, 510 A.2d 385 (1986), this Court sustained the respondents' preliminary objection to the service of the petition for review and dismissed the petition along with the petitioner's motion for summary judgment on the petitioner's failure to properly serve the petition for review on the Attorney General.

Mandamus, of course, "is an extraordinary writ which is available only to compel the performance of a ministerial act or a mandatory duty where there exists a clear legal right in the [petitioner], a corresponding duty in the [respondents], and the want of any other adequate and appropriate remedy." *Jamieson v. Pennsylvania Board of Probation and Parole,* 90 Pa. Commonwealth Ct. 318, 322, 495 A.2d 623, 625 (1985). Moreover, the "purpose of mandamus is not to establish legal rights, but to enforce those rights which are already established." *Id.* at 322, 495 A.2d at 625.

The respondents demur that BC-ADM 610 does not provide for AIDS screening and aver that the dictates of that administrative directive are being met.

In determining preliminary objections in the form of a demurrer, we must accept as true all well-pleaded facts and inferences that may reasonably be deduced therefrom, but not conclusions of law. . . . Nor may we sustain a demurrer unless the law will not permit recovery, and in ruling upon a demurrer, any doubts should be resolved against sustaining the demurrer. . . .

*Bahian by Bahian v. Department of Public Welfare,* 89 Pa. Commonwealth Ct. 644, 649-50, 493 A.2d 803, 806-7 (1985) (citations omitted).

The provisions of BC-ADM 610 upon which the petitioner relies to support his request for AIDS testing of Huntingdon's food handlers are as follows:

X. PHYSICAL EXAMINATION—FOOD HANDLERS

A. It is the responsibility of the medical department at each institution to:

1. Require each food handler candidate to have the following tests: Serology, urinalysis and a recent (within one year) PPD screening for

tuberculosis. After all clinical tests have been made, the inmate will be given a screening physical examination in accordance with standard medical procedures.

2. The Food Service Manager will then conduct a class on personal and Food Service hygiene for prospective food handlers.

B. With the exception of those who are presently being treated with an active case of syphillis, gonorrhea, etc., an individual who has had a history of venereal disease may be employed in the Food Service area. All questions concerning medical clearance will be the final decision of the institution Medical Director.

1. A notation will be made on each individual's record indicating that he has been medically cleared for employment in the Food Service area. That notation will become a permanent part of the individual's medical record.

2. This physical examination will be performed annually.

3. The Hospital Administrator will notify the Deputy Superintendent for Treatment and the Vocational Placement Officer when candidates are to be examined.

C. It is the responsibility of the Vocational Placement Officer to notify the hospital at least one week prior to the employment of an individual in the Food Service area, so that all tests may be performed and the candidate screened for disease.

1. No individual will be employed unless he has met the requirements of this medical screening.

We cannot read the foregoing in any rational way so as to provide authority to require that the Huntingdon

food handlers, at this time, be tested for AIDS antibodies. We must, therefore, insofar as the respondents' demurrer to the request for AIDS testing now is concerned, sustain the preliminary objection and dismiss that portion of the first count of the petition for review.

As to the allegation that the existing medical screening procedures for food handlers are not being followed at Huntingdon, we must conclude, however, that the petitioner has pled facts which, if proven, would be sufficient to support a mandamus order. We, therefore, will overrule the respondents' preliminary objection to Count I, insofar as the alleged noncompliance with BC-ADM 610 is concerned.

### Count II

Section 1 of the Act of June 14, 1923, P.L. 775, 61 P.S. §101, provides that:

Every warden, board of prison managers, prison inspectors, or any other person in authority, in charge of any person or penitentiary, who may or shall have in charge any person confined therein whether such person be a tried or an untried prisoner, shall provide that such person shall have at least two hours daily, physical exercise in the open, weather permitting, and upon such days on which the weather is inclement, such person shall have two hours, daily, of physical exercise indoors of such prison or penitentiary: Provided, however, The same is safe and practical, and the judges of the several courts are to be the judges thereof.

In his second count, the petitioner alleges that, on days of inclement weather, he and other B-Block inmates are not provided with indoor exercise in accordance with the above-cited statute. The respondents preliminarily object on the basis that the doctrine of *lis*

*pendens,* prior pending action, mandates that this count be dismissed.

*Lis pendens* is a valid defense only when the parties, the causes of action and the relief sought are the same in both actions. *Procacina v. Susen,* 301 Pa. Superior Ct. 392, 447 A.2d 1023 (1982). And, the burden is on the moving party, here, the respondents, to show that, in each case, the same parties are involved, the same rights asserted, and the same relief sought. *Commonwealth ex rel. Lindsley v. Robinson,* 30 Pa. Commonwealth Ct. 96, 372 A.2d 1258 (1977). Furthermore, a mere assertion that prior actions are pending, will not satisfy the burden. *Id.*

The respondents' *lis pendens* objection is founded upon the argument that B-Block prisoner exercise rights under 61 P.S. §101 were the subject of *Inmates of B-Block v. Jeffes,* 79 Pa. Commonwealth Ct. 275, 470 A.2d 176 (1983), *aff'd per curiam,* 504 Pa. 509, 475 A.2d 743 (1984), and that this case is still pending before this Court. This argument must fail for two reasons.

First, we do not believe that the petitioner seeks to assert the same right or requests the same relief as *Inmates of B-Block.* Alternate indoor exercise on days of inclement weather is a specific provision of 61 P.S. §101. This right was not involved in *Inmates of B-Block;* that case involved charges, ultimately found to be true, of a total denial of all out-of-cell exercise to B-Block prisoners. The inclement weather indoor out-of-cell exercise alternative was not at issue in the prior case.

Secondly, we do not agree with the respondents' contention that *Inmates of B-Block* is still pending before us. Our careful review of the docket entries for that case reveals that our final order in that matter issued on January 16, 1985, and, that, by its explicit

terms,[4] that order expired in January, 1986. We, therefore, believe that *Inmates of B-Block* is no longer a pending case in this Court.

Accordingly, we must conclude that the defense of *lis pendens* is inapplicable to the second count of the instant petition for review. We, therefore, must overrule the respondents' preliminary objection to the petitioner's second count.

### Count III

In the third count of his petition for review, the petitioner seeks an order to compel the respondents to permit him to receive visits from a Ms. Sandra Good, whom he has described as his religious advisor.

Section 1 of the Act of June 11, 1879, P.L. 140, 61 P.S. §121 pertinently provides that:

> All persons confined or detained in any prison . . . shall have the privilege of practicing the religion of their choice, and shall be at liberty to secure for that purpose the services of any minister connected with any religious denomination in the state. . . .

And, 37 Pa. Code §93.6(b)(2) pertinently provides that:

> Each inmate will be permitted to select a religious advisor from the outside community who

---

[4] This Court's January 16, 1985 order in *Inmates of B-Block* is as follows:

AND NOW, having received the parties' stipulation withdrawing the petitioner's Opposition to the Bureau of Correction's plan for Implementation and amending the plan submitted September 17, 1984, we hereby accept such stipulation and further order the parties to provide this Court with a copy of the monthly status reports which are to be compiled by the respondents between February 1, 1985 and January 1, 1986 in compliance with the stipulation.

has received endorsement from the recognized faith group authority. This person will be permitted to visit the inmate on an individual basis in accordance with general rules governing visitation.

Accordingly, we must determine if the foregoing will support an order in mandamus to allow the petitioner to receive visits from Ms. Good.

Prison officials have wide latitude in administering prison affairs. *Lindsley.* And, while this discretion is not so broad that prison officials may ignore constitutionally guaranteed rights, *id.,* the federal courts have recognized that, in a case where first amendment rights were implicated, " '[a] prisoner's right to practice his religion is not absolute' and that prison officials may restrict the exercise of an inmate's constitutional rights when necessary to facilitate some legitimate goals and policies of penal institutions." *Dreibelbis v. Marks,* 675 F.2d 579, 580 (3d Cir. 1982). While in the present matter, the petitioner seeks to enforce a statutory rather than a constitutional right, we find that the reasoning of the *Dreibelbis* court is persuasive.

The aforementioned general visitation rules are found at 37 Pa. Code §93.3 which specifies that "[i]f a visit is a threat to the security and order of the institution, the visit may be terminated or disallowed." 37 Pa. Code §93.3(i)(1). These regulations further provide that "[v]isitation may be restricted or suspended or special security precautions imposed for violation of visiting rules or as warranted by the temperament of the inmate involved." 37 Pa. Code §93.3(i)(4).

We must conclude, therefore, that the respondents' preliminary objection that the petitioner's third count seeks to compel a discretionary act for which mandamus will not lie is correct. Consequently, we must sustain the respondents' preliminary objection to Count III of

the petition for review, and we must dismiss that count.[5]

## Count IV

Finally, the petitioner seeks an order to permit review of the civil service examinations and employment credentials of the Huntingdon staff to ensure compliance with minimum qualifications of their various positions. He alleges that, in his judgment, "the behavior of certain members of the staff is extremely odd perhaps reflecting serious and/or dangerous emotional or psychological disorders. . . ." He further alleges that, in his judgment, "the reasoning ability, the intellect and the knowledge of certain members of the staff, particularly of the guard staff is so profoundly deficient as to represent danger to [his] safety and rights, and to seriously compromise giving these persons the broad discretionary authority ordinarily vested in prison administrators."

The respondents preliminarily object that the foregoing simply fails to support a petition for a writ of mandamus. We agree.

The petitioner cites no authority for his broad plea that the qualifications of the entire Huntingdon staff be subjected to such a review. He, therefore, has failed to show a clear legal right to such relief.

Accordingly, we will sustain the respondents' demurrer to Count IV of the petition for review, and will dismiss that count.

---

[5] The respondents have alternatively preliminarily objected to Count III on a *lis pendens* theory due to the petitioner's lawsuit in federal district court by which he also seeks to compel the respondents to permit him to receive visits from Ms. Good. Due to our dismissal of Count III on the respondents' demurrer, we need not address their *lis pendens* objection to that Count.

## PER CURIAM ORDER

AND NOW, this 12th day of March, 1987, the respondents' preliminary objection to Count I of the petition for review in the above-captioned matter is sustained insofar as that count seeks to require AIDS antibody testing for food handlers at the State Correctional Institution at Huntingdon, and that portion of Count I is dismissed. Insofar as Count I alleges non-compliance with the established medical screening policies for food handlers at Huntingdon, the respondents' preliminary objection is overruled.

The respondents' preliminary objection to Count II of the petition for review is overruled.

The respondents' preliminary objections to Counts III and IV of the petition for review are sustained and those counts are dismissed.

With respect to those counts of the petition for review to which the respondents' preliminary objections have been overruled, the respondents are directed to submit an answer to this Court within thirty (30) days after certification of this order in accordance with Pa. R.A.P. 1516(c).